# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **DOCTOR'S ASSOCIATES INC.,** | **CASE NO.: 3:16-cv-00562-JCH** |
| Plaintiff, | **Hon. Judge Janet C. Hall** |
| v. | |
| **MANOJ TRIPATHI and SADHANA TRIPATHI,** | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM SUPPORTING 1) MOTION TO DISMISS, ABSTAIN AND/OR TRANSFER ACTION TO CALIFORNIA AND 2) OPPOSITION TO MOTION TO COMPEL ARBITRATION

## TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT................................................1

II.     STATEMENT OF FACTS..........................................................................................3

        A.      Background Facts. ................................................................................................3

        B.      The California Action challenges the Connecticut judgment and DAI's
                arbitration scheme. ...............................................................................................5

        C.      DAI's Petition seeks relief for California citizens Patel and Letap. ........................5

        D.      The arbitration agreement is one-sided in favor of DAI and its agents. ..................6

                1.      The arbitration clause provides that arbitration shall proceed under
                        AAA Expedited Rules, which are unfair to the Tripathis. ..........................6

                2.      The arbitration clause bars consolidation of claims and proceedings
                        involving tortfeasors like Patel and Letap under any circumstances. ..........7

                3.      The arbitration clause provides solely for a Connecticut forum in
                        derogation of California law.......................................................................7

                4.      The arbitration clause contains one-sided exculpatory, attorney fee,
                        and cost-shifting provisions.......................................................................7

                5.      The arbitration clause gives DAI alone access to a court to obtain
                        damages and injunctive relief.....................................................................8

                6.      The arbitration clause limits damages. ......................................................8

III.    ARGUMENT ...........................................................................................................9

        A.      The Court should dismiss DAI's petition to the extent it seeks 1) to compel
                arbitration of the Tripathis' California challenge to the Connecticut judgment
                and 2) to enjoin ongoing unauthorized arbitration proceedings............................9

        B.      The Court should dismiss DAI's petition for want of complete diversity
                jurisdiction............................................................................................................10

        C.      The Court should dismiss or stay DAI's petition under the Colorado River
                abstention doctrine. .............................................................................................13

        D.      The Court should transfer this action to the Northern District of California
                under the first-filed rule........................................................................................16

        E.      The Court should deny DAI's Petition because the arbitration clause is
                unconscionable. ....................................................................................................16

                1.      The Court should apply California law, not Connecticut law, to the
                        unconscionability inquiry. ........................................................................16

                        a.      There was no meeting of the minds on choice of law. ...................17

b.     California law would apply even if there were an effective choice of law. ...................................................................19

c.     Application of Connecticut Law would violate California fundamental public policies. ..........................................21

d.     California's law of unconscionability is statutory and is a fundamental public policy. ..............................................22

e.     California's franchise law is statutory and is a fundamental public law. ........................................................................24

f.     California's law barring non-competition provisions is statutory and is a fundamental public policy. ................................26

g.     California's law barring exculpatory contracts is statutory and is a fundamental public policy. ..................................27

h.     California's law prohibiting liquidated damages is statutory and is a fundamental public policy. ..................................27

i.     California's law barring one-way attorney fees is statutory and is a fundamental public policy. ..................................28

j.     California has a materially greater interest than Connecticut in policing this unconscionable contract. ........................29

2.     DAI's arbitration agreement is procedurally unconscionable. ..................29

3.     DAI's arbitration clause is substantively unconscionable. ........................30

a.     The arbitration agreement is not mutual. .......................................31

b.     The arbitration clause improperly limits punitive damages and completely exculpates DAI's agents from liability. ...............32

c.     The arbitration clause improperly limits economic damages ........33

d.     Place and manner restrictions and cost shifting provisions render the arbitration clause unconscionable. ...............................33

e.     The arbitration clause improperly seeks to void the California Franchise Relations Act, an unwaivable statute, through Connecticut choice of law and forum. ............................36

f.     Because of the multiple defects in DAI's arbitration scheme, the remedy here is to deny DAI's Petition in its entirety. ........................................................................................36

F.     DAI's arbitration scheme is void as against public policy .....................................37

G.     DAI's Petition should be denied because it has unclean hands. ...........................38

H.     DAI's petition should be denied because there was no meeting of the minds on arbitration; in the alternative, arbitration should be held in California. ................39

IV.     CONCLUSION ......................................................................................................39

MEMO SUPPORTING MOT. TO DISMISS AND OPP. TO ARBITRATION  - ORAL ARGUMENT REQUESTED

# TABLE OF AUTHORITIES

## CASES

Akopyan v. Wells Fargo Home Mortgage, Inc.,
    215 Cal. App. 4th 120, 155 Cal. Rptr. 3d 245 (2013) ............................................................19

Alan v. Superior Court,
    111 Cal. App. 4th 217, 3 Cal. Rptr. 3d 377 (2003) ...................................................................9

Am. Car Rental, Inc. v. Comm'r of Consumer Prot.,
    273 Conn. 296, 869 A.2d 1198 (2005).....................................................................................28

Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York,
    762 F.2d 205 (2d. Cir. 1985) ..................................................................................................15

Armendariz v. Found. Health Psychcare Servs., Inc.,
    24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000).........................................22, 29, 34, 35

Arthur v. Davis,
    126 Cal.App.3d 684, 178 Cal.Rptr. 920 (1981) .......................................................................38

Bellsite Development, LLC v. Town of Monroe,
    155 Conn.App. 131 (2015)......................................................................................................19

Bencharsky v. Cottman Transmission Sys., LLC,
    625 F. Supp. 2d 872 (N.D. Cal. 2008).................................................................................23, 29

BHP Billiton Petroleum (Americas) Inc. v. Atlantia Offshore Ltd.,
    312 S.W.3d 813 (2009) ...........................................................................................................10

Bradley v. Harris Research, Inc.,
    275 F.3d 884 (9th Cir. 2001)...................................................................................................25

Bridge Fund Capital Corp. v. Fastbucks Fran. Corp.,
    622 F.3d 996 (9th Cir. 2010)............................................................................................ passim

Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,
    No. 2:08CV00767-MCE-EFB, 2008 WL 3876341, (E.D. Cal. Aug. 20, 2008), aff'd
    and remanded, 622 F.3d 996 (9th Cir. 2010..............................................................................34

Capili v. Finish Line, Inc.,
    116 F. Supp. 3d 1000 (N.D. Cal. 2015).................................................................................33

Carter v. Countrywide Credit Indus., Inc.,
    362 F.3d 294 (5th Cir. 2004)...................................................................................................23

Chavarria v. Ralphs Grocer Co.,
    812 F. Supp. 2d 1079 (C.D. Cal. 2011), aff'd and remanded sub nom. Chavarria v.
    Ralphs Grocery Co., 733 F.3d 916 (9th Cir. 2013) ...........................................................35, 37

Colorado River Water Conservation Dist. v. United States,
    424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ..................................................13, 14, 15

Colorall Techs. Int'l, Inc. v. Plait,
    No. 05-60401 CIV COHN, 2005 WL 4655380 (S.D. Fla. July 15, 2005)..........................2, 16

Comb v. PayPal, Inc.,
    218 F. Supp. 2d 1165 (N.D. Cal. 2002)...................................................................................33

Comedy Club, Inc. v. Improv W. Associates, 553 F.3d 1277 (9th Cir. 2009).............................26

Contech Const. Products, Inc. v. Blumenstein, 1:11CV878, 2012 WL 2871425 (S.D.
    Ohio July 12, 2012) ...............................................................................................................27

Cottman Transmission Systems, LLC v. Kershner,
    492 F.Supp.2d 461, (E.D.Pa.2007)........................................................................................25

Cytec Indus., Inc. v. Powell,
    630 F.Supp.2d 680 (N.D.W.Va.2009)....................................................................................10

D'Antuono v. Service Road Corp.,
    789 F.Sup.2d 308 (D.Conn.2011) ..........................................................................................24

Day v. Union Mines Inc.,
    862 F.2d 652 (7th Cir. 1988)..................................................................................................13

Dayton Time Lock Service, Inc. v. Silent Watchman Corp.,
    52 Cal.App.3d 1, 124 Cal.Rptr. 678 (Cal.App.2d Dist.1975) ................................................26

DirecTV Early Cancellation Litig., 738 F. Supp. 2d 1062 (C.D. Cal. 2010)................................28

Doctor's Associates, Inc. v. Distajo,
    66 F.3d 438 (2nd Cir. 1995) ..................................................................................................13

Doctor's Assocs., Inc. v. Casarotto,
    517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) ........................................................16

Dowell v. Biosense Webster, Inc.,
    179 Cal.App.4th 564, 102 Cal. Rptr. 3d 1 (2009). ................................................................27

E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.,
    160 F.3d 925 (2d Cir. 1998). .................................................................................................10

Elgar v. Elgar,
    238 Conn. 839, 679 A.2d 937 (1996)...............................................................................19, 21

First Intercontinental Bank v. Ahn,
    798 F.3d 1149 (9th Cir. 2015).................................................................................................28

First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.,
    862 F. Supp. 2d 170, (E.D.N.Y. 2012)..................................................................................15

Health Net of California, Inc. v. Department of Health Services,
    113 Cal.App.4th 224, 6 Cal.Rptr.3d 235 (2003) ...................................................................27

Home Buyers Warranty Corp. v. Hanna,
    750 F.3d 427 (4th Cir.2014)........................................................................................11, 12, 13

Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court,
   133 Cal. App. 4th 396, 34 Cal. Rptr. 3d 659 (2005) ......................................................32, 33

It's Just Lunch Intern. LLC. v. Island Park Enter. Group, Inc.,
   EDCV08-367-VAPJCRX, 2008 WL 4683637 (C.D. Cal. Oct. 21, 2008)...................22, 25, 27

Jade Fashion & Co. v. Harkham Indus., Inc.,
   229 Cal. App. 4th 635, 177 Cal. Rptr. 3d 184 (2014) ............................................................38

Jones v. GNC Franchising, Inc.,
   211 F.3d 495  (9th Cir. 2000)..................................................................................................25

Juarez v. Jani-King of California, Inc.,
   No. 09-3495 SC, 2012 WL 177564 (N.D. Cal. Jan. 23, 2012) ...............................................26

Klaxon Co. v. Stentor Electric Mfg. Co.,
   313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ..............................................................16

Klussman v. Cross Country Bank,
   134 Cal.App.4th 1283, 36 Cal.Rptr.3d 728 (2005) ...........................................................22, 27

Kulukundis Shipping Co., S/A, v. Amtorg Trading Corp.,
   126 F.2d 978 (2d Cir. 1942)....................................................................................................38

Laxmi Invs., LLC v. Golf USA,
   193 F.3d 1095 (9th Cir. 1999)..................................................................................................18

LeBlanc v. New England Raceway, LLC, 116 Conn.App. 267 (2009) .........................................19

Leong v. The Goldman Sachs Grp. Inc.,
   No. 13-CV-8655 (JMF), 2016 WL 1736164 (S.D.N.Y. May 2, 2016)....................................10

Lifestyle Imp. Centers, LLC v. E. Bay Health, LLC, 2:13-CV-735, 2013 WL 5564144
   (S.D. Ohio Oct. 7, 2013) .........................................................................................................27

Little v. Auto Steigler, Inc.,
   29 Cal.4th 1064, 130 Cal.Rptr.2d 892 Cal. (2003) ................................................................30

MacDermid, Inc. v. Raymond Selle and Cookson Group PLC,
   535 F. Supp. 2d 308 (D. Conn. 2008) .....................................................................................26

Mahroom v. Best W. Intern., Inc.,
   C 07-2351JFHRL, 2009 WL 2216578 (N.D. Cal. July 22, 2009) ..........................................25

Martinez v. Master Protection Corp., 118 Cal.App.4th 107, 12 Cal.Rptr.3d 663 (2004) ........31, 37

Martino v. Cottman Transmission Systems, Inc.,
   218 Mich.App. 54, 554 N.W.2d 17 (1996) ..............................................................................27

Mazuma Holding Corp. v. Bethke,
   1 F. Supp. 3d 6 (E.D.N.Y. 2014)..............................................................................................13

Mercuro v. Superior Court,
   96 Cal.App.4th 167, 116 Cal.Rptr.2d 671 (2002) ...................................................................37

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,
  473 U.S. 614, 105 S.Ct. 334, 687 L.Ed.2d 444  (1985) .........................................................38

Mohamed v. Uber Techs., Inc.,
  109 F. Supp. 3d 1185 (N.D. Cal. 2015)....................................................................................35

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.,
  460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ..........................................................14, 16

Nagrampa v. MailCoups, Inc.,
  469 F.3d 1257 (9th Cir. 2006) ..............................................................................29, 30, 33, 36

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,
  673 F.3d 84 (2d Cir. 2012)......................................................................................................13

Norfolk & Western R. Co. v. Train Dispatchers,
  499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991) ..........................................................19

O'Hare v. Municipal Resource Consultants,
  107 Cal.App.4th 267, 132 Cal.Rptr.2d 116 (2003) ..................................................................31

Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,
  42 Cal.3d 1157, 232 Cal.Rptr. 567, 728 P.2d 1202, 1209 (1986)...........................................35

Owens–Illinois, Inc. v. Meade,
  186 F.3d 435 (4th Cir.1999)...............................................................................................11, 12

Pardee Construction Co. v. Superior Court,
  100 Cal.App.4th 1081, 123 Cal.Rptr.2d 288 (2002) ................................................................32

Perdue v. Crocker National Bank,
  38 Cal. 3d 913, 702 P.2d 503 (1985)........................................................................................30

Perry v. Thomas,
  482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) ...........................................................16

Phoenix Surgicals, LLC v. Blackstone Med., Inc.,
  2011 WL 63992 (D. Conn. 2011)..............................................................................................20

Pokorny v. Quixtar Inc.,
  07-00201 SC, 2008 WL 850358 (N.D. Cal. Mar. 31, 2008) aff'd, 601 F.3d 987 (9th
  Cir. 2010).............................................................................................................................23, 30

Pond v. Insurance Co. of North America,
  151 Cal.App.3d 280, 198 Cal.Rptr. 517, 522 (1984) ..............................................................38

Provident Tradesmens Bank & Trust Co. v. Patterson,
  390 U.S. 102, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968) ......................................................11, 12

Reichhold Chemicals, Inc. v. Hartford Accident & Indemnity Co.,
  243 Conn. 401 (1997)................................................................................................................17

Retained Realty, Inc. v. Spitzer,
  643 F. Supp. 2d 228 (D. Conn. 2009) ......................................................................................28

Ribbens Intern'l, S.A. de C.V. v. Transport Intern'l Pool, Inc.,
    47 F.Supp.2d 1117 (C.D.Cal. 1999)........................................................................28

Roberts v. Synergistic Int'l, LLC,
    676 F. Supp. 2d 934 (E.D. Cal. 2009) ....................................................................39

Sanchez v. Valencia Holding Co., LLC,
    61 Cal. 4th 899, 353 P.3d 741 (2015) ....................................................................30

Schutten v. Shell Oil Co.,
    421 F.2d 869 (5th Cir. 1970)..................................................................................12

Sherman St. Associates, LLC v. JTH Tax, Inc.
    2004 WL 2377227 (D. Conn. 2004)........................................................................20

Sherman St. Assocs., LLC v. JTH Tax, Inc.,
    2009 U.S. Dist. LEXIS 13105, 2009 WL 426469 (D. Conn. 2009) .......................20

Squinobal v. Zenko,
    FBTCV116018033, 2015 WL 3555284 (Conn. Super. May 8, 2015)....................22

Stirlen v. Supercuts, Inc.,
    51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138 (1997) .................................................31

Tough Mudder, LLC v. Sengupta,
    614 Fed. Appx. 643 (4th Cir. 2015) ..................................................................11, 13

Town of New Hartford v. Connecticut Resources Recovery Auth.,
    UWYCV0401855802X02, 2006 WL 2730965 (Conn. Super. Sept. 11, 2006)......27

Vaden v. Discover Bank,
    556 U.S. 49, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009) ..........................................10

Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc.,
    32 Cal.App.4th 1511, 38 Cal.Rptr.2d 612 (Cal.Ct.App.1995)...............................25

Winter v. Window Fashions Professionals, Inc.,
    166 Cal. App. 4th 943, 83 Cal. Rptr. 3d 89, 95 (2008) ....................................18, 39

Woodside Homes of Cal., Inc. v. Superior Court,
    107 Cal.App.4th 723, 2 Cal.Rptr.2d 35 (2003) ......................................................32

Yu v. Signet Bank/Virginia,
    69 Cal. App. 4th 1377, 82 Cal. Rptr. 2d 304 (1999) ................................................9

## **STATUTES**

Cal. Bus. & Prof. Code § 16600............................................................................26

Cal. Bus. & Prof. Code § 16601............................................................................26

Cal. Bus. & Prof. Code § 20010............................................................................24

Cal. Bus. & Prof. Code § 20020............................................................................24

Cal. Bus. & Prof. Code § 20040.5 ........................................................................24

Cal. Bus. & Prof. Code §16602 ...........................................................................26

Cal. Bus. & Prof. Code §16602.5 ........................................................................26

Cal. Civ. Code § 1668 ..........................................................................................27

Cal. Civ. Code § 1670 ..........................................................................................22

Cal. Civ. Code § 1670.5 .......................................................................................22

Cal. Civ. Code § 1671(b) ......................................................................................28

Cal. Civ. Code § 1710.40 (a) ..................................................................................9

Cal. Civ. Code § 3294 ..........................................................................................32

Cal. Civ.Code § 1717 (a) ......................................................................................28

Conn. Gen. Stat. Ann. § 42-133h .........................................................................25

Conn. Gen.Stat. § 42–150bb.1 .............................................................................28

Fed. R. Civ. P. 19 .................................................................................................11

Fed.R.Civ.P. 19(b)(1) ...........................................................................................12

Fed.R.Civ.P. 19(b)(2) ...........................................................................................12

Fed.R.Civ.P. 19(b)(3) ...........................................................................................12

Fed.R.Civ.P. 19(b)(4) ...........................................................................................12

## OTHER AUTHORITIES

Restatement (Second) of Conflict of Laws § 187 (1971)........................................20

Restatement (Second) of Conflict of Laws § 188 (1971)........................................21

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

Manoj and Sadhana Tripathi (the "Tripathis") have been franchisees in the Doctor's Associates, Inc.'s (DAI) Subway restaurant system since 2001.  They presently own, in whole or in part, some 35 stores and employ over 80 people.  In 2015, DAI's California based "Development Agents," Chirayu Patel ("Patel") and Letap Group, LLC (Letap) became the Tripathis' supervisors.

The Tripathis' California lawsuit (the California Action), which is the subject of this Petition, alleges that Patel and Letap have attempted to grow Patel's personal Subway franchise empire by instigating DAI to terminate Subway franchises (such as the Tripathis) in Northern California and cede them over to Patel or his designees.  Among Patel's and Letap's alleged tactics were providing false and/or misleading inspection reports to DAI.  Based on these false reports, DAI instituted various arbitration proceedings against the Tripathis to terminate some of their franchises. But these proceedings were filed before a contractually unauthorized provider – a fact the Tripathis did not become aware of until retaining franchise counsel.  Based on further false applications submitted to the Connecticut Superior Court, DAI was able to secure default judgments and subsequently has attempted to domesticate those judgments in California.

On March 23, 2016, the Tripathis filed the California Action challenging 1) DAI's Connecticut judgment terminating their franchises and awarding damages, 2) DAI's arbitration scheme, 3) DAI's pending unauthorized arbitrations against the Tripathis, and 4) Patel's and Letap's wrongful scheme to steal the Tripathis' franchises.  This Petition followed.

The Court should dismiss, transfer, or deny DAI's Petition to Compel Arbitration (the Petition) for the following reasons.[1]  First, the Court should dismiss the petition, at least in part, because the Tripathis are challenging DAI's effort to enforce the Connecticut state court judgment.  California law expressly permits affirmative collateral attacks on sister state

_____

[1] Many of the legal issues here overlap with another case presently before the Court involving the same arbitration scheme as applied to California residents: DAI v. Pahwa, Case 3:16-cv-00446-JCH

judgments. Such a challenge is outside the scope of the arbitration agreement and is otherwise non-arbitrable.  Second, the Court should dismiss the petition, at least in part, because the Tripathis are challenging DAI's institution of arbitration before a contractually unauthorized arbitration provider, who has refused to yield jurisdiction and where DAI refuses to dismiss such proceedings.  These issues are not arbitrable under the Federal Arbitration Act.

Third, the Court should dismiss the Petition based on the lack of diversity jurisdiction. DAI's Petition seeks relief for Patel and Letap and both are California citizens.  The Court should look behind the pleadings and determine the real parties to this dispute are not diverse. Alternatively, Patel and Letap are indispensable parties and must be joined – thereby destroying diversity.   Fourth, the Court should dismiss or stay this action under the <u>Colorado River</u> abstention doctrine, which allows a federal court to abstain from entertaining litigation that is parallel to a state proceeding. Parallelism exists when substantially the same parties are contemporaneously litigating substantially the same issues in different courts.  Here, the California Action expressly challenged the arbitration clause and scheme at issue in this Petition. This Connecticut action involves the enforceability of the exact same provisions. Accordingly, the two actions are parallel and, as noted below, the <u>Colorado River</u> factors all favor abstention.

Fifth, if the Court declines to dismiss or abstain, it should transfer the Petition to the Northern District of California and stay this action just as the federal district court did in <u>Colorall Techs. Int'l, Inc. v. Plait</u>, No. 05-60401 CIV COHN, 2005 WL 4655380 (S.D. Fla. July 15, 2005) when applying the "first-filed rule" to a petition to compel arbitration.  Sixth, if the Court declines to dismiss, abstain, or transfer the matter, it should find DAI's arbitration scheme unconscionable under California law. Under Connecticut's choice of law rules, California law applies to this unconscionability determination.   Here, the arbitration scheme is unconscionable in many ways: it is not mutual, it seeks to improperly exculpate DAI and its agents from wrongdoing, it improperly shifts costs, it limits available remedies and damages, and it otherwise operates to insulate DAI and its agents from California public policy statutes via tandem choice of law and forum provisions.  DAI cannot articulate a legitimate reasons why it should be able to

avail itself of the privilege of doing business with California residents and impose on them unconscionable agreements that would operate to eliminate or substantially hinder the vindication of their rights and remedies.

## II.   STATEMENT OF FACTS

### A.   Background Facts.

DAI sells Subway sandwich franchises.  Tripathi Dec., ¶ 2.  The Tripathis are California residents who have accumulated some thirty-five Subway franchises near San Francisco since 2001.  Id.   Since 2001, the Tripathis have fulfilled the terms of their franchise agreements.  Tripathi Dec., ¶ 8.  The Tripathis signed subleases and invested in fixtures and equipment.  Tripathi Dec., ¶ 7.  They introduced and promoted new products and updated and maintained their stores to high standards.  Tripathi Dec., ¶ 8.  In 2015, Patel and Letap became the Development Agent over the Plaintiffs.  Id.  Development Agents assist DAI it in managing the franchise system at the local level.  DAI Memo, p. 2., fn. 3.

Patel and Letap falsely and/or misleadingly reported to Doctor's Associates, Inc. that the Tripathis had various food safety issues and other significant operating issues with the knowledge and intent that DAI would terminate their franchises. Tripathi Dec., ¶ 11.  Based on Patel and Letap's negative reports, DAI instituted termination proceedings before an unauthorized arbitration provider. Tripathi Dec., ¶ 12.  By way of background, DAI's franchise and arbitration agreements were adhesive, prolix, and form agreements presented with no opportunity to negotiate the terms. Tripathi Dec., ¶ 6.  Moreover, there was no negotiation over the arbitration provisions.  Id.  Historically, the franchise agreements contained some form of arbitration and Connecticut choice of law and forum.   The most recent 2012 agreement by its terms amended and superseded all previous arbitration provisions.  This agreement attached to

the Petition as Exhibit L and provides in pertinent part: "K. YOU UNDERSTAND AND

ACKNOWLEDGE THAT PARAGRAPH 14 OF THIS AGREEMENT AMENDS ANY

EXISTING FRANCHISE AGREEMENTS YOU HAVE WITH US to include the following

provisions of this Agreement:...Paragraph 10 (regarding dispute resolution)…."    Paragraph 10

of the 2012 agreement in turn provides in pertinent part:

> 10. ARBITRATION OF DISPUTES.
>
> a. Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration. The arbitration shall be administered by the American Arbitration Association or its successor ("AAA") in accordance with its administrative rules including, as applicable, the Commercial Rules of the AAA and under the Expedited Procedures of such rules or under the Optional Rules For Emergency Measures of Protection of the AAA. In the event that the AAA is no longer in business, arbitration shall be administered by the American Dispute Resolution Center or its successor ("ADRC") in accordance with its administrative rules….

Pet. Ex. L, pp. 12-13, emphasis added.

Despite AAA not being out of business, DAI breached the contract by instituting

numerous ADRC arbitrations against the Tripathis.  Tripathi Dec., ¶ 14.   Until recently, the

Tripathis had no appreciation that ADRC was the wrong provider. Tripathi Dec., ¶ 13.  After

securing awards from ADRC and to gain judicial confirmation of the award, DAI falsely

represented to the Connecticut court that ADRC was in fact the authorized provider.  Tripathi

Dec., ¶ 16, Ex. D.  Boulter Dec. Ex. A (Complaint) ¶ 29, Ex. C thereto.[2]  Specifically, DAI

falsely represented to the Connecticut court that the Tripathis "agreed that any such arbitration

would be administered by an arbitration agency, such as the American Dispute Resolution Center

("ADRC") or the American Arbitration Association ("AAA")…"  Tripathi Dec. ¶ 16, Ex. D.

This fraud was also not isolated to the Tripathis.  Complaint ¶ 29, Ex. D.  When the Tripathis

---

[2] DAI has concealed material facts supporting the California Action by omitting all Exhibits. The complete California Complaint is attached as Exhibit A to the Boulter Dec.

objected in writing to ADRC and DAI about past and ongoing ADRC arbitrations, Tripathi Dec. Ex. F, they heard nothing from ADRC or DAI stating they would stop pending arbitrations or withdraw the Connecticut confirming judgments.  Tripathi Dec., ¶ 20.

B.   **The California Action challenges the Connecticut judgment and DAI's arbitration scheme.**

The California Action challenges the Connecticut judgment confirming the ADRC arbitration award, seeks to enjoin pending ADRC arbitrations, seeks a declaration that DAI's arbitration scheme, forum selection provisions, and choice of law provisions are unconscionable and otherwise unenforceable, and seeks injunctive relief against enforcement of such provisions. Tripathi Dec., ¶¶ 19-22; Complaint ¶¶ 35, 64, 68-71.  The Complaint alleges that DAI knowingly filed before ADRC, an unauthorized provider, and thereafter fraudulently secured a Connecticut state court judgment confirming the ADRC award.  Complaint ¶¶ 22 -30, 39-40, 68.  The ADRC award terminated stores 25529, 31177, and 31901 and granted DAI liquidated damages of $250 per day per store.  Tripathi Dec. Ex. C.  Id.   DAI sought confirmation of the award through a fraudulent application. Tripathi Dec. Ex. D.  Based on the application, the Connecticut court confirmed the award.  Id.  The Complaint seeks to avoid California recognition of the judgment and to vacate it as being 1) rendered in excess of and/or without fundamental and/or subject matter jurisdiction and 2) procured by DAI's misconduct.   Complaint ¶¶ 28 -27, p. 16 ¶ 2.  The Complaint also challenges DAI's taking of $250 per store per day ($750 per day) under the judgment and has asked the Court to order DAI to return all such moneys and enjoin any such further takings.  Complaint ¶¶ 28, 59, 61, 68 p. 16 ¶ 3, 7.

C.   **DAI's Petition seeks relief for California citizens Patel and Letap.**

In the Petition, DAI notes that Patel and Letap Group are effectively parties to the arbitration agreement. Petition ¶ 9. (DAI's "agents…are intended beneficiaries of the arbitration

clause; and that all claims against them that arise out of or relate to the Agreement[s] must be resolved with [DAI] through arbitration."). DAI's Petition seeks relief for itself, Patel, and Letap:

> 12. <u>By attempting to sue</u> DAI and <u>its agent in California</u>, the Tripathis have failed, neglected and/or refused to arbitrate in accordance with the Agreements and have otherwise breached them.
>
> 13. DAI further puts the Tripathis on notice that, <u>if they continue to threaten or pursue any claims or defenses relating to</u> DAI's or <u>its agent's conduct in the California State Court Lawsuit</u> or otherwise except in arbitration, <u>it reserves its right to ask the Court to enter an injunction restraining their wrongful conduct</u>.
>
> Wherefore, <u>DAI requests that this Court enter an order</u> pursuant to 9 U.S.C. § 4 <u>directing the Tripathis to arbitrate their claims against</u> DAI and <u>its agent(s)</u> that they asserted or could have asserted in the California State Court Lawsuit pending arbitration of their dispute with DAI in the manner provided in the Agreements' arbitration clauses and that the Court order the Tripathis, jointly and severally, to pay all of DAI's costs, expenses, and attorneys' fees incurred in connection with compelling arbitration and in connection with the California State Court Lawsuit.

Petition, pp. 3-4, emphasis added.

DAI's Petition goes further, stating "By suing in court <u>and naming DAI's agent as a defendant</u>, <u>the Tripathis further violated the Agreements and are now also responsible for paying all of</u> DAI's and <u>its agent's costs, expenses, and attorneys' fees incurred in connection with the Petition and the California State Court Lawsuit</u>.  DAI Memo p.2., emphasis added.

### D. The arbitration agreement is one-sided in favor of DAI and its agents.

The applicable arbitration provisions are set forth in Exhibit L to the Petition.  DAI memo p.2. fn. 2. The arbitration provisions are one-sided as follows:

### 1. The arbitration clause provides that arbitration shall proceed under AAA Expedited Rules, which are unfair to the Tripathis.

Section 10.a. of the arbitration clause provides in pertinent part:

> The arbitration shall be administered by the American Arbitration Association or its successor ("AAA") in accordance with its administrative rules including, as applicable, the Commercial Rules of the AAA and under the Expedited Procedures of such rules or under the Optional Rules For Emergency Measures of Protection of the AAA.

The AAA Expedited Procedures are found at Boulter Dec. Ex. B.  In pertinent part, they provide 1) limited time for the franchisees to respond to actions, 2) limitations on amending counterclaims, 3) exhibits are exchanged only two days before the hearing (leaving little or no time for evaluation) 3) hearings must take place within 30 days of appointment of the arbitrator (thereby eliminating an opportunity for discovery), and 4) hearings may not exceed one day.

>    **2.      The arbitration clause bars consolidation of claims and proceedings involving tortfeasors like Patel and Letap under any circumstances.**

Section 10.a. of the arbitration clause provides in pertinent part: "The parties further agree not to consolidate the arbitration with any other proceedings to which we are a party, except for arbitrations in which you and we are the sole parties."

>    **3.      The arbitration clause provides solely for a Connecticut forum in derogation of California law.**

Section 10.b. of the arbitration clause provides in pertinent part: "The parties agree that Bridgeport, Connecticut shall be the site for all arbitration hearings held under this Paragraph 10, and that such hearings shall be before a single arbitrator, not a panel."

>    **4.      The arbitration clause contains one-sided exculpatory, attorney fee, and cost-shifting provisions.**

Section 10.d. of the arbitration clause provides in pertinent part:

> You may only seek damages or any remedy under law or equity for any arbitrable claim against us or our successors or assigns. You agree that our Affiliates, shareholders, directors, officers, employees, agents and representatives, and their affiliates, shall not be liable nor named as a party in any arbitration or litigation proceeding commenced by you where the claim arises out of or relates to this Agreement. You further agree that the foregoing

7

parties are intended beneficiaries of the arbitration clause; and that all claims against them that arise out of or relate to this Agreement must be resolved with us through arbitration. If you name a party in any arbitration or litigation proceeding in violation of this Subparagraph 10 d., you will reimburse us for reasonable costs incurred, including but not limited to, arbitration fees, court costs, lawyers' fees, management preparation time, witness fees, and travel expenses incurred by us or the party.

**5.     The arbitration clause gives DAI alone access to a court to obtain damages and injunctive relief.**

Section 10.c. of the arbitration clause provides in pertinent part:

Notwithstanding the arbitration clause in Subparagraph 10.a., we may bring an action for damages, injunctive relief, or both in any court having jurisdiction to enforce our trademark or proprietary rights, the covenants not to compete, or the restriction on disclosure of Confidential Information in order to avoid irreparable harm to us, our affiliates and the franchise system as a whole.

**6.     The arbitration clause limits damages.**

Section 10.g. of the arbitration clause provides in pertinent part:

Subject to federal or state law, if a party defaults under any other provision of this Paragraph 10, or under any provision of Paragraph 17 or Paragraph 18, including, but not limited to, making a claim for special, incidental, consequential, punitive, or multiple damages, or damages in excess of the amount permitted under this Agreement, or you name a person or entity in any arbitration or legal proceeding other than us, the defaulting party must correct its claim. The defaulting party will be responsible for all expenses incurred by the other party, or the improperly named persons or entities, including lawyers' fees, and will be liable for abuse of process.

Section 17 in turn provides:

a. Each party hereby waives, without limitation, any right it might otherwise have to assert a claim for and/or to recover lost profits and other forms of consequential, incidental, contingent, punitive and exemplary damages from the other except as provided herein. Each party's liability shall be limited to actual compensatory damages….. b. Actual compensatory damages referenced above in

subparagraph 17.a. Shall not exceed the greater of (l) $100,000.00 or (2) at your sole option, all amounts paid to us for franchise fees and royalties for this agreement for up to three years preceding the date of any award herein.

## III.   **ARGUMENT**

### A.   **The Court should dismiss DAI's petition to the extent it seeks 1) to compel arbitration of the Tripathis' California challenge to the Connecticut judgment and 2) to enjoin ongoing unauthorized arbitration proceedings.**

Challenges to court judgments affirming an arbitration award are not arbitrable. California law provides that a sister state judgment "may be vacated on any ground which would be a defense to an action in this state on the sister state judgment [.]" Cal. Civ. Code § 1710.40 (a).  Following section 1710.40, the Law Revision Commission Comment explains: "Common defenses to enforcement of a sister state judgment include the following:... [3] the judgment was rendered in excess of jurisdiction;…[5] the plaintiff is guilty of misconduct;… " Id., emphasis added.   Here, the Complaint has alleged the judgment fails for two reasons: 1) it was rendered in excess of jurisdiction and 2) that the plaintiff was guilty of misconduct.  Complaint ¶¶ 23-35. The judgment was rendered in excess of jurisdiction because the underlying arbitration award was rendered by a body, the ADRC, which had no jurisdiction over the Tripathis.  Alan v. Superior Court, 111 Cal. App. 4th 217, 228, 3 Cal. Rptr. 3d 377, 386 (2003) (An agreement to arbitrate before a specific forum is integral to the agreement).  Moreover, DAI engaged in misconduct first by demanding arbitration before the wrong tribunal and by plainly misleading the Connecticut State court that ADRC was authorized to conduct the arbitration.  Although the Tripathis will raise these arguments in defense to any enforcement proceedings, the California court has authority to decide the issue of the validity of the judgment even though it is raised affirmatively in Complaint.  Yu v. Signet Bank/Virginia, 69 Cal. App. 4th 1377, 1393, 82 Cal. Rptr. 2d 304, 315 (1999) (rejecting argument that "even if a California court could properly inquire into the validity of the Virginia judgment in a proceeding to enforce the judgment, such an inquiry cannot be used "to award affirmative relief.").  As a consequence, the Court cannot

order arbitration over matters involving a challenge to the Connecticut judgment.

Despite making clear objections, DAI and ADRC have both refused to yield on the improper ongoing ADRC arbitrations. Tripathi Dec., ¶¶ 19-20, Exs. D-F.  Under the FAA, courts have jurisdiction to enjoin unauthorized arbitrations.  Enjoining "an arbitration proceeding which is not called for by the contract interferes with neither the letter nor the spirit of this law [the FAA]…to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present..." BHP Billiton Petroleum (Americas) Inc. v. Atlantia Offshore Ltd., 312 S.W.3d 813, 821 (2009), citation omitted; Leong v. The Goldman Sachs Grp. Inc., No. 13-CV-8655 (JMF), 2016 WL 1736164, at *2-3 (S.D.N.Y. May 2, 2016) ("This court has the power to enjoin Katz and Scher from proceeding with the [unauthorized] CBOE arbitration, and by doing so it effectively can stay that arbitration.").  The California court thus has jurisdiction to enjoin the pending unauthorized arbitrations and such proceeding is not arbitrable.

### B.    The Court should dismiss DAI's petition for want of complete diversity jurisdiction.

DAI expressly asks the Court to compel arbitration with Patel and Letap although they are not named as parties. Petition, pp. 3-4.  Both Patel and Letap are California citizens.  Tripathi Dec., ¶ 8; Boulter Dec. Ex. C.  The Court may look behind the Petition to determine the real parties in interest.  "The test for determining the existence of diversity jurisdiction is generally the citizenship of real parties to the controversy." E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998).  The U.S. Supreme Court's decision in Vaden v. Discover Bank, 556 U.S. 49, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009), held that a court facing a § 4 arbitration petition may "look through" to the parties underlying substantive controversy. While Vaden was a federal question case, some courts have suggested it is applicable in diversity cases. Cytec Indus., Inc. v. Powell, 630 F.Supp.2d 680, 686 n. 2 (N.D.W.Va.2009) (suggesting that "the reasoning in Vaden appears equally applicable to cases resting on alleged diversity jurisdiction, where no diversity exists in the underlying substantive action").

Alternatively, this Court can find Patel and Letap indispensable parties under Fed. R. Civ. P. 19. The Fourth Circuit has repeatedly found necessary a non-joined party that has an interest in a petition to compel arbitration even if the party can litigate arbitrability in the underlying state proceeding. See Home Buyers Warranty Corp. v. Hanna, 750 F.3d 427, 434-35 (4th Cir.2014) (finding absent party had interest in petition to compel arbitration where it also had a right to demand arbitration); Owens–Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir.1999) (holding non-diverse parties in underlying state action who were omitted from petition to compel arbitration but subject to same arbitration provision were necessary parties). A decision to dismiss based on non-joinder "must be made pragmatically, in the context of the substance of each case, rather than by a procedural formula…" Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 119, n. 16, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968). In an analogous case, the Fourth Circuit affirmed a district court's holding that a local defendant agent of the party to the arbitration clause was indispensable and that dismissal was warranted for lack of jurisdiction. Tough Mudder, LLC v. Sengupta, 614 Fed. Appx. 643 (4th Cir. 2015).

Patel and Letap are necessary parties under Rule 19(a)(2)(ii). There is no question that Patel and Letap have a right to demand arbitration and have an interest in how the arbitration issue is resolved because all face the same declaratory relief claims and all rely on the same agreement. Given the overlapping legal and factual issues over enforceability of the arbitration scheme including 1) the exculpatory provisions, 2) the provision calling for the Tripathis to pay Patel's and Letap's arbitration fees, travel expenses, legal fees etc., 3) the Connecticut venue and choice of law, 4) the discovery limitations, and 5) the damages limitations, any ruling on the Petition will necessarily impact the obligations of all parties to the state case. Concurrent state and federal proceedings concerning arbitrability also create a "high likelihood" that one or more of the parties will face inconsistent obligations. See Home Buyers Warranty Corp., 750 F.3d at 434; see also Owens–Illinois, Inc., 186 F.3d at 441. Indeed, one court may compel arbitration (or strike certain provisions of the agreement) while the other does not. The risk of differing rulings justifies having one tribunal with all of the affected parties before it hear the matter. See

Home Buyers Warranty Corp., 750 F.3d at 434; Owens–Illinois, Inc., 186 F.3d at 441.

The Court must determine whether Patel and Letap are indispensable in light of Rule 19(b)'s four factors. The first factor is "the extent to which a judgment rendered in [Patel's or Letap's] absence might prejudice" them "or the existing parties." Fed.R.Civ.P. 19(b)(1). This inquiry "speaks to many of the same concerns addressed by the necessity analysis under Rule 19(a)(1)(B)." Home Buyers Warranty Corp., 750 F.3d at 435. The Tripathis have a strong interest in having the arbitrability issue and their claims for declaratory relief litigated before a single tribunal with all affected parties present. Proceeding otherwise subjects them to a "high potential for factual and legal whipsawing" where they may need to litigate their claims in different forums that may reach different conclusions on those issues. See Owens–Illinois, Inc., 186 F.3d at 441. This factor favors finding Patel and Letap are indispensable.

The second factor is whether the Court could lessen or avoid "the prejudicial impact of proceeding" without Patel and Letap present through protective measures. Fed.R.Civ.P. 19(b)(2). This Court could not take any such actions because prejudice stems from the pendency of the arbitrability issue before this Court without all affected parties present. See Home Buyers Warranty Corp., 750 F.3d at 436; see also Owens–Illinois, Inc., 186 F.3d at 442.  The third factor addresses "whether a judgment in [Patel's or Letap's] absence would be adequate." Fed.R.Civ.P. 19(b)(3). This factor focuses on "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." Home Buyers Warranty Corp., 750 F.3d at 436 (quoting Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968)). The Fourth Circuit explained in Home Buyers that parallel proceedings concerning arbitrability "could produce just the opposite: incomplete, inconsistent, and inefficient rulings." Id.; Schutten v. Shell Oil Co., 421 F.2d 869, 874 (5th Cir. 1970) ("Furthermore, one of the purposes, though not the sole purpose, of Rule 19 is the avoidance of multiple litigation of essentially the same issues."). These factors indicate Patel and Letap are indispensable.  The final factor is whether DAI "would have an adequate remedy if the action were dismissed for non-joinder." Fed.R.Civ.P. 19(b)(4). There is no question it would.  The California court has jurisdiction over

the parties and the power to compel arbitration just as this Court does. See Home Buyers Warranty Corp., 750 F.3d at 436. The California court has the benefit of having all affected parties before it and is "better positioned to apply [California] law to determine the validity of the [arbitration] provision." Tough Mudder, LLC v. Sengupta, 614 Fed. Appx. 643 (4th Cir. 2015). In sum, all of the relevant factors indicate that Patel and Letap are indispensable.[3]

### C. The Court should dismiss or stay DAI's petition under the Colorado River abstention doctrine.

The Court should dismiss or stay this action under the Colorado River abstention doctrine because of the parallel state proceeding. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012), citation omitted. "Perfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Mazuma Holding Corp. v. Bethke, 1 F. Supp. 3d 6, 20 (E.D.N.Y. 2014). Here, there is no doubt that the California court would dispose of the claims presented in this federal case. The Tripathis first filed suit in California state court and expressly and affirmatively challenged the arbitration scheme at issue in this Petition as follows:

---

[3] Doctor's Associates, Inc. v. Distajo, 66 F.3d 438, 445 (2nd Cir. 1995) is distinguishable. Critical to its holding, the Doctor's Assoc. court stated that "individuals who are not parties to the arbitration agreement cannot be 'indispensable' parties under Rule 19(b) if they do not meet either of the threshold tests of 19(a)." Id. at 446. The court determined that the parties at issue were not indispensable because "complete relief" could be afforded with those parties i.e. an order compelling arbitration, and the possible prejudice of piecemeal litigation is overcome by the FAA's strong bias in favor of arbitration. Id. at 446. The Doctor's Assoc. court concluded that "[a] district court should not consider the citizenship of strangers to the arbitration contract, since they are not "parties [to] the suit arising out of the controversy within the meaning of the FAA." Id. However, this Court should find that Patel and Letap are covered by arbitration clause based on the language of the clause, by DAI's request that the Court order the Pahwas to arbitrate against Patel and Letap, by DAI's threats to invoke the jurisdiction of the Court to enjoin state court proceedings against Patel and Letap.

64.     An actual controversy now exists between Plaintiffs and Doctor's Associates, Inc. regarding a number of the terms and conditions of the Franchise Agreement and Plaintiffs desire a judicial determination and declaration of their rights…:

d.      Plaintiffs further contend that the arbitration clause is unconscionable under California law and therefore unenforceable, that California law applies to such unconscionability determination, and seek a declaration to that effect.

e.      The franchise agreements contain ostensible provisions making Patel and Letap third-party beneficiaries of the agreement and that could be interpreted to bar and/or require arbitration of Plaintiffs' affirmative claims against Patel and Letap and otherwise affect the rights between Patel and Plaintiffs.  Plaintiffs contends that such provisions are unlawful and otherwise unenforceable seek a declaration to that effect.

f.      The franchise agreements contain damage limitations, jury trial waivers, liquidated damages provisions, and other provisions that Plaintiffs contend are unlawful, unconscionable, and otherwise unenforceable they seek a declaration to that effect.

Complaint ¶ 64 pp. 13-14.

Colorado River identified four factors a federal court should consider when determining whether to abstain from jurisdiction: (1) whether one court first obtained in rem (or quasi in rem) jurisdiction over property involved in that litigation; (2) "inconvenience of the federal forum"; (3) "desirability of avoiding piecemeal litigation"; and (4) "the order in which jurisdiction is obtained by the concurrent forums." Colorado River, 424 U.S. at 818–819.  Moses Cone added two additional factors to consider: (1) whether federal or state law applies; and (2) adequacy of state court proceeding. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 23–27, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983).   No one factor is determinative and the weight to be given any factor depends on the setting of the case. Id. at 16, 103 S.Ct. 927.  Accordingly, "the factors must be considered flexibly and pragmatically, not as a 'mechanical checklist.'" Id.

The first factor favors abstention because the California court has jurisdiction over the Tripathi's franchises, the real estate leaseholds, and the personal property, fixtures, and equipment that each franchise holds.  Tripathi Dec., ¶ 7, Ex. B.  The court could enforce or deny

the specific performance of the franchises and/or the leaseholds.  The court could also deny enforcement of the post-term non-compete agreements, which would affect the Tripathi's utilization of their leaseholds and personal property.  This factor weighs in favor of abstention. The second factor considers each forum's geographic proximity to the evidence and witnesses. Colorado River, 424 U.S. at 820, 96 S.Ct. 1236 (noting that "the 300 mile distance between the District Court in Denver and the [relevant state court]" is a significant factor supporting abstention).  Here, the California court is 3,000 miles from this Court and closer to the evidence and witnesses.  Patel and Letap also maintain their principal offices Marin County.  Tripathi Dec., ¶ 8. Moreover, no party is a Connecticut resident.  Rather, DAI is a Florida Corporation and, maintains its headquarters in Miami Springs, Florida. Boulter Dec. Ex. D.

The third factor, the potential for piecemeal litigation, strongly favors abstention. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988); Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (2d Cir. 1985) (noting that, "[a]s in Colorado River, the danger of piecemeal litigation is the paramount consideration").  And courts in this circuit have recognized the "risk of piecemeal adjudication is especially great where a party in one lawsuit is absent from the other."  First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 862 F. Supp. 2d 170, 189 (E.D.N.Y. 2012).  Perhaps most important, the two actions ask the respective courts to decide the enforceability of DAI's arbitration scheme, both courts would be considering the same issues and might come to conflicting decisions.

The fourth factor, the order of jurisdiction, facially favors the Tripathis but is in fact neutral as only negligible progress has occurred in either action.  The fifth factor favors abstention because the California law governs whether the arbitration provision is unconscionable or against public policy.  The sixth factor favors abstention because the California action is adequate to protect DAI's interests.  Finally, an additional factor courts consider under Colorado River is "the vexatious or reactive nature of either the federal or the

state litigation." <u>Moses H. Cone</u>, 460 U.S. at 18 n. 20.  This action could be considered vexatious where DAI filed its Petition not naming Patel and Letap but plainly seeks relief on their behalf.

### D.   The Court should transfer this action to the Northern District of California under the first-filed rule.

The case of in <u>Colorall Techs. Int'l, Inc. v. Plait</u>, No. 05-60401 CIV COHN, 2005 WL 4655380 (S.D. Fla. July 15, 2005) is on directly point with the procedural posture of this case and the questions presented.  The district court applied the "first-filed rule" to a petition to compel arbitration and transferred the case to the Northern District of California notwithstanding the fact that a motion to compel arbitration is generally filed in the district where arbitration is sought.  "This Court agrees that an order to compel arbitration must come from this court, however, it does not necessarily follow that this Court is the proper court to determine the circumstances surrounding the making of the arbitration clause itself." <u>Id.</u> at 6.  The court transferred the action to the first-filed court for a determination on the enforceability of the arbitration clause.  <u>Id</u>. at 6.  For these reasons the Tripathis ask the court to transfer this matter to the Northern District of California.

### E.   The Court should deny DAI's Petition because the arbitration clause is unconscionable.

"[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law. <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).  "[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." <u>Perry v. Thomas</u>, 482 U.S. 483, 492–93 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

### 1.   The Court should apply California law, not Connecticut law, to the unconscionability inquiry.

Connecticut choice-of-law rules apply here. <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  There are two independent reasons California law should apply.  First, there is no effective Connecticut choice of law because there

was no meeting of the minds on that issue.  Second, even if there was an effective choice of law, application of Connecticut law to the unconscionability determination would violate California public policies and California has a material greater interest in deciding the issue.

**a.      There was no meeting of the minds on choice of law.**

In the absence of an effective agreement, choice of law for a contract claim should be determined according to the most significant relationship test of the Restatement (Second) Section 188, which provides that unless another state has an overriding policy-based interest in the application of its law, the law of the state in which the bulk of the contracting transactions took place should be applied.  Reichhold Chemicals, Inc. v. Hartford Accident & Indemnity Co., 243 Conn. 401, 414 (1997).  Here was no effective choice of law for failure of a meeting of the minds.  DAI provided the Tripathis a "franchise disclosure document" (FDD) in connection with the operative 2012 agreement.  Tripathi Dec., ¶ 3, Ex A.  The FDD representations survive any contrary representations in the franchise agreement: "This Agreement, including the Recitals and all exhibits, contains the entire understanding of the parties and supersedes any prior written or oral understandings or agreements of the parties relating to the subject matter of this Agreement, provided that nothing in this Agreement is intended to disclaim or waive any representations made to you in the Disclosure Document."  Agreement ¶ 13, Petition Ex. L.  DAI's 2012 FDD repeatedly advised the Tripathis that they would be entitled to the protections of California law and even specifically referenced the California Franchise Relations Act.  The 2012 circular provides:

> Arbitration and any litigation must be held in Connecticut, <u>subject to state law</u>…Connecticut law applies, except the United States Arbitration Act governs the arbitration provisions, <u>subject to state law</u>….certain <u>State and Federal legislation may affect the respective rights and obligations of the parties to the agreements</u>…These states in the United States have <u>statutes which may supersede the Franchise Agreement</u> in your relationship with the franchisor, <u>including the areas of termination and renewal of the franchise</u>:…<u>California - Bus. & Prof. Code Sections 20000-20043</u>…  These states may amend their statutes or adopt new statutes and other states may also adopt statutes affecting the franchise agreement.  <u>These and other states may have court</u>

17

<u>decisions which may supersede the franchise agreement in your relationship with the franchisor or including the areas of termination and renewal of your franchise</u>.

Tripathi Dec. ¶¶ 3-5, Ex. A., emphasis added.

The Tripathis emphasize that the first two clauses above do not say "may be subject to state law" but rather affirmatively state that they are "subject to state law."  Moreover, DAI references the anti-waiver provisions of § 20010 and the forum selection nullifying of § 20040.5 of the California Franchise Relations Act as those that "may supersede the Franchise Agreement."  A reasonable interpretation of these FDD representations above is that the duty to arbitrate should be subject to and affected by California law, superseded by California court decisions, and that, at a minimum, any choice of law and duty to arbitrate in Connecticut is subject to and yields to countervailing state laws including § 20040.5.  DAI adopted these representations in its franchise agreement, never dispelled them, and the Tripathis at all material times believed that they would be protected by California law. Tripathi Dec. ¶ 3-5.  Moreover, it is black letter law that ambiguities are construed against the drafter, here, DAI.

Under similar facts, in <u>Laxmi Invs., LLC v. Golf USA</u>, 193 F.3d 1095 (9th Cir. 1999), the Ninth Circuit Court of Appeals held that a forum selection clause in a franchise agreement was unenforceable because the parties never clearly agreed on the venue in which arbitration was to take place. <u>Laxmi</u>, 193 F.3d at 1097 ("the parties...never agreed to a forum outside California").  <u>Laxmi's</u> holding was based on the fact that the franchisor had given the franchisee an offering circular that stated in part that the franchise agreement required binding arbitration in Oklahoma, but that the requirement "may not be enforceable under California law," a reference to § 20040.5.  <u>Id.</u> at 1096.  The court held that there was no "meeting of the minds on the forum selection provision." <u>Id.</u> at 1097.   A California Court of Appeal later expressly upheld the <u>Laxmi's</u> holding. <u>Winter v. Window Fashions Professionals, Inc.</u>, 166 Cal. App. 4th 943, 950, 83 Cal. Rptr. 3d 89, 95 (2008) ("the trial court correctly relied on <u>Laxmi</u> to hold that the arbitration provision was not enforceable because there was no meeting of the minds between respondents and appellants as to that agreement to arbitrate.).  Connecticut law is in accord with these

principles.  "To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties ... each must be found to have been based on an identical understanding by the parties ... If the minds of the parties have not truly met, no enforceable contract exists ..." Bellsite Development, LLC v. Town of Monroe, 155 Conn.App. 131, 139 (2015). Moreover, it "is well-settled that the party seeking to establish the existence of an enforceable contract bears the burden of proving a meeting of the minds between the parties." LeBlanc v. New England Raceway, LLC, 116 Conn.App. 267, 271 (2009).

Here, there was no meeting of the minds on choice of Connecticut law because DAI represented to the Tripathis that 1) the validity arbitration could be subject to countervailing state law and court decisions, and 2) state law could override a Connecticut forum and choice of law. For these reasons, section 188 of the Restatement (Second) of Conflict of Laws applies and militates in favor of California law. The Tripathis discuss section 188 in sub section b. below.

Finally, it is well settled that statutory requirements of the state where a contract is to be performed are incorporated into the parties' agreement. Norfolk & Western R. Co. v. Train Dispatchers, 499 U.S. 117,130  111 S.Ct. 1156, 113 L.Ed.2d 95 (1991) ("[l]aws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as fully as if they had been expressly referred to or incorporated in its terms"); Akopyan v. Wells Fargo Home Mortgage, Inc., 215 Cal. App. 4th 120, 135, 155 Cal. Rptr. 3d 245, 253-54 (2013)  (Statutory terms become a part of the contract with full binding effect upon each party.). As a consequence, the provisions of California law invalidating the forum selection provision are part of the contract between the parties.

>       **b.    California law would apply even if there were an effective choice of law.**

Even in the face of otherwise valid choice of law, California law should apply here because of its important public policies and material greater interest in the matter.  Connecticut follows section 187 (2) of the Restatement (Second) of Conflict of Laws.  Elgar v. Elgar, 238 Conn. 839, 848, 679 A.2d 937 (1996).  The Elgar court held that "[p]arties to a contract generally

are allowed to select the law that will govern their contract, unless either: '(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.' " Id. at 850, citation omitted. Connecticut law does not apply here because of the second factor.

The Tripathis will show that California law applies but momentarily digress to highlight how this Court has applied the same principles in Connecticut Franchise Act (CFA) disputes.  In Sherman St. Assocs., LLC v. JTH Tax, Inc., 2009 U.S. Dist. LEXIS 13105, 2009 WL 426469 (D. Conn. 2009) this Court denied a summary judgment on a Connecticut Franchise Act claim despite a Virginia choice of law clause because "Connecticut has a strong public policy, demonstrated by the CFA and its 'remedial purpose' of preventing a franchisor from unfairly exerting its economic leverage to take advantage of a franchisee, that weighs against allowing a Connecticut franchisee to waive its right to the protections of the CFA."  In an earlier opinion in the same case, this Court declined to transfer the matter to Virginia despite a forum selection clause. Sherman St. Associates, LLC v. JTH Tax, Inc. 2004 WL 2377227at *8 (D. Conn. 2004). ("Connecticut has demonstrated, through its adoption of the Act, that it has a strong public policy protecting its local franchisees from abuse, unfair economic conditions and early termination by franchisors…enforcement of the forum-selection clause in the present case would frustrate this public policy, and, therefore, the interests of justice weigh in favor of keeping this case in Connecticut."); see also Phoenix Surgicals, LLC v. Blackstone Med., Inc., 2011 WL 63992, at *3 (D. Conn. 2011) ("In light of the clear public policy of the CFA, the forum selection clause of the parties' agreement is unenforceable by this Court because it is unreasonable.")  Just as Connecticut, California has passed franchise statutes demonstrating a strong interest in protecting its franchisees.

The inquiry under section 187 (2) involves three steps. The first is to identify the state

whose law would apply in the absence of the choice of law provision. The <u>Restatement (Second) of Conflict of Laws § 188 (1971)</u> provides that the following factors be considered:"(a) the place of contracting,"(b) the place of negotiation of the contract,"(c) the place of performance,"(d) the location of the subject matter of the contract, and"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties." "These contacts are to be evaluated according to their relative importance with respect to the particular issue." <u>Elgar</u>, 238 Conn. at 848.

California law would apply under § 188. The first factor favors application of California law because the Tripathis signed the contract in California and it was presumably signed by DAI at its principal place of business in Florida.  Tripathi Dec., ¶ 6. The second factor favors the Tripathis because the contract was an adhesion contract tendered to the Tripathis in California. Tripathi Dec., ¶ 6. The remaining factors all favor application of California law.  Though DAI had some contractual obligations to direct from its Florida headquarters (perhaps via personnel in Connecticut but still presumably directed from Florida), the place of performance and the location of the subject matter of the contract is California. The agreements between the parties centered on the operation of the franchise in California. The day-to-day operations and services of the franchisee were performed in California. Tripathi Dec., ¶ 8. The Tripathi's advertising channels and client base are both in the Bay Area.  <u>Id.</u>  Moreover, DAI renders many of its services provided to the Tripathis, through Patel and Letap group, which are both California residents.  DAI Memo, p. 2, fn. 3.   Finally, the most significant issues relate to California public policies as follows.

**c.     Application of Connecticut Law would violate California fundamental public policies.**

The second step is to determine whether application of the law of the chosen state would violate a fundamental policy of the otherwise applicable state law. <u>Elgar</u>, 238 Conn. at 851. Because Connecticut and California both apply section 187 of the <u>Restatement</u>, the Tripathis discuss California cases deciding similar choice of law issues. "There is no bright-line definition of a fundamental policy. A fundamental policy must be "substantive," and "may be embodied in

a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." It's Just Lunch Intern. LLC. v. Island Park Enter. Group, Inc., EDCV08-367-VAPJCRX, 2008 WL 4683637, at *3 (C.D. Cal. Oct. 21, 2008), citations and internal quotations omitted.  Connecticut courts agree.  Squinobal v. Zenko, FBTCV116018033, 2015 WL 3555284, at *3-5 (Conn. Super. May 8, 2015). ("[T]here are no set or generally recognized rules to determine what a fundamental public policy is; it is basically what the courts in each state say it is.").

### d.   California's law of unconscionability is statutory and is a fundamental public policy.

California's law of unconscionability is statutory and is a fundamental public policy. Although unconscionability was originally a judicially-created doctrine, it was codified into California Civil Code § 1670.5 in 1979.  See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."). California state and federal courts have often discussed section 1670.5 in relation to choice of law clauses. In Klussman v. Cross Country Bank, 134 Cal.App.4th 1283, 36 Cal.Rptr.3d 728 (2005) the court refused to apply a Delaware choice of law because of public policy including section 1670.5:

> Several public policy interests of California are at stake, including the statutory policies against exculpatory waivers, prohibiting enforcement of unconscionable contract provisions and against waivers of laws established for a public purpose. (Civ.Code, §§ 1668 [exculpatory contracts contrary to policy], 1670.5 [court may refuse to enforce unconscionable contract], 3513 [no waiver of a law established for a public reason].)

Klussman, 134 Cal.App.4th at 1299.

Bridge Fund Capital Corp. v. Fastbucks Fran. Corp., 622 F.3d 996 (9th Cir. 2010) is

directly on point.  The Ninth Circuit upheld the district court's application of California law (under section 187) to the unconscionability determination of an arbitration clause despite a Texas choice of law and choice of forum in the franchise agreement because application of Texas law to the unconscionability determination would violate fundamental California public policy.[4]   The <u>Bridge Fund</u> court relied California cases that rejected tandem foreign choice of law and forum provisions that could foster evasion of California public policies.  The <u>Bridge Fund</u> court explained "the question here is whether California has a fundamental policy against enforcing arbitration agreements that provide that (1) the arbitrator shall hear the dispute in Dallas County, Texas; (2) the claims subject to arbitration shall not be arbitrated on a class-wide basis; (3) while the franchisor may institute an action for temporary, preliminary, or permanent injunctive relief, the franchisee is not afforded the same remedy; (4) there is a one year statute of limitations for all claims; and (5) the parties are limited to recovery of actual damages and waive any right to consequential, punitive or exemplary damages." <u>Id</u>. 622 F.3d at 1003.

In <u>Bridge Fund</u>, the Court found it significant that the arbitration clause was enforceable under Texas law, which favored arbitration agreements and "had no counterpart to the California public policy statute at issue" and that Texas law was therefore in conflict with California law on this issue. <u>Id</u>. at 1003, citing (<u>Carter v. Countrywide Credit Indus.</u>, Inc., 362 F.3d 294, 301 n. 5 (5th Cir.2004) (noting that California law is more hostile than Texas law to arbitration

---

[4] <u>See</u> <u>also</u>, <u>see</u> <u>also</u> <u>Pokorny v. Quixtar Inc.</u>, 07-00201 SC, 2008 WL 850358, at *7 (N.D. Cal. Mar. 31, 2008) <u>aff'd</u>, 601 F.3d 987 (9th Cir. 2010) (There "is a material difference between Michigan and California law regarding unconscionability… Michigan law recognizes the availability of alternative goods, services, or employment as a defense to procedural unconscionability, California law does not."); <u>Bencharsky v. Cottman Transmission Sys., LLC</u>, 625 F. Supp. 2d 872, 878-80 (N.D. Cal. 2008) (The "Court concludes that the [Pennsylvania] choice-of-law provision in the parties' agreement is unenforceable for purposes of determining the validity of the arbitration provision. This Court will therefore apply California law in determining whether the arbitration clause is unconscionable.").

agreements, and the application of one law instead of the other is often determinative on the question of the enforceability of the agreement).  Similarly, Connecticut unconscionability law is significantly more tolerant of one-sided agreements than California law.[5]

### e.  California's franchise law is statutory and is a fundamental public policy.

Here, as in <u>Bridge Fund</u>, Connecticut has no applicable statutory counterparts to the California public policies that DAI's arbitration clause seeks to eviscerate.  The Tripathis have brought a claim against DAI under the California Franchise Relations Act found at California Business & Professions Code section 20000 et seq.  Pursuant to the CFRA, "no franchisor may terminate a franchise prior to the expiration of its term, except for good cause… and a reasonable opportunity, which in no event need be more than 30 days, to cure the failure." Cal. Bus. & Prof. Code § 20020.  The CFRA is unwaivable. Cal. Bus. & Prof. Code § 20010 ("Any condition, stipulation or provision purporting to bind any person to waive compliance with any provision of this law is contrary to public policy and void.").  The CFRA also voids out of state venue provisions.  Cal. Bus. & Prof. Code § 20040.5. ("A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state.").

The Ninth Circuit Court of Appeals specifically has held that section 20040.5 embodies a strong public policy:

---

[5] For example, in <u>D'Antuono v. Service Road Corp.</u>, 789 F.Sup.2d 308 (D.Conn.2011), this Court held that an arbitration clause containing a collective action and class action waiver, a cost and fee-shifting provision, and a provision shortening the statute of limitations was not unconscionable under Connecticut law. The Court addressed first the plaintiffs' claims that the arbitration clause was procedurally unconscionable because it was "hidden in a maze of fine print, [because] no effort was made to alert [them] directly to the existence of the [provision], [and because] the parties had unequal bargaining power." <u>Id.</u>, at 328. The Court held that the arbitration clause was not procedurally unconscionable because the clause was written in ordinary size type, in bold, capital letters, and underlined. Further, the Court held that a "take it or leave it" employment contract that is written by a relatively sophisticated employer is not <u>per se</u> procedurally unconscionable despite it being an adhesion contract where the parties had unequal bargaining power.

> We conclude and hold that § 20040.5 expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue. A provision, therefore, that requires a California franchisee to resolve claims related to the franchise agreement in a non-California court directly contravenes this strong public policy and is unenforceable

Jones v. GNC Franchising, Inc., 211 F.3d 495, 497-98 (9th Cir.2000). [6]

The Tripathis concede that section 20040.5 is preempted by the Federal Arbitration Act.

Bradley v. Harris Research, Inc., 275 F.3d 884 (9th Cir. 2001).  But nothing in Bradley suggests

that consideration of section 20040.5 may not be made as an unconscionability factor.  Indeed,

without deciding the issue, the Bridge Fund court observed that "[b]ecause the selection of Texas

as the forum (which is inherently intertwined with the choice of Texas law, see Hall v. Superior

Court, 150 Cal.App.3d 411, 197 Cal.Rptr. 757, 761 (1983)) makes the arbitration clause

primarily a tool that Fastbucks may employ to evade California statutory protections for

franchisees, the provision would have the effect of shielding the stronger party from liability, and

is thus likely unconscionable." Bridge Fund, 622 F.3d at 1005.  Finally, while Connecticut has a

franchise law, it cannot apply here under the terms of the agreement (¶ 13) or under the law.

Conn. Gen. Stat. Ann. § 42-133h (franchisee must have place of business in Connecticut).

---

[6] Many other cases note that California franchise laws represent fundamental public policy and override choice of law provisions.  See, e.g., Mahroom v. Best W. Intern., Inc., C 07-2351JFHRL, 2009 WL 2216578 at (N.D. Cal. July 22, 2009) ("the public policy provisions of the CFRA give the Court discretion to apply California law, and (3) choice-of-law provisions have been held invalid when their enforcement would be unconscionable."); Cottman Transmission Systems, LLC v. Kershner, 492 F.Supp.2d 461, 467 (E.D.Pa.2007) (CFIL embodies fundamental policy of California); America Online, Inc. v. Superior Court, 90 Cal.App.4th 1, 11, 108 Cal.Rptr.2d 699 (Cal.Ct.App.2001) (CFIL "enacted to protect the statute's beneficiaries from deceptive and unfair business practices"); Wimsatt v. Beverly Hills Weight Loss Clinics Int'l, Inc., 32 Cal.App.4th 1511, 1521, 38 Cal.Rptr.2d 612 (Cal.Ct.App.1995) ("In enacting the [CFIL], our Legislature showed a special solicitude for franchisees in their dealings with franchisors."). It's Just Lunch Intern. LLC. v. Island Park Enter. Group, Inc., 2008 WL 4683637, at *3 (C.D. Cal. Oct. 21, 2008) (Declining to enforce Nevada choice of law where the "CFIL has been found to embody a fundamental California policy….fundamental policies may protect a person against the oppressive use of superior bargaining power"), citations and internal quotes omitted.

> **f.      California's law barring non-competition provisions is statutory and is a fundamental public policy.**

The Complaint challenges the in-term and post-term non-competition provisions.

Complaint ¶ 64.a.   Connecticut law generally enforces such agreements.  MacDermid, Inc. v.

Raymond Selle and Cookson Group PLC, 535 F. Supp. 2d 308, 316 (D. Conn. 2008).  California

almost never enforces post-term non-compete agreements. [7]  Cal. Bus. & Prof. Code § 16600

("Except as provided in this chapter, every contract by which anyone is restrained from engaging

in a lawful profession, trade, or business of any kind is to that extent void.").  As to "in-term"

non competes, California law closely scrutinize every aspect of such agreements to determine if

they are competition restrictions or are legitimate ways to protect the franchisor's trademark or

proprietary information. Juarez v. Jani-King of California, Inc., No. 09-3495 SC, 2012 WL

177564, at *11-12 (N.D. Cal. Jan. 23, 2012) (Denying summary judgment and observing that "it

is unclear how prohibiting Plaintiffs from having any financial interest or employment in any

'contract cleaning' or 'any related business' 'anywhere' is necessary to protect Jani–King's trade

secrets or proprietary information" and that application of Dayton Time Lock Service, Inc. v.

Silent Watchman Corp., 52 Cal.App.3d 1, 124 Cal.Rptr. 678 (Cal.App.2d Dist.1975), which

relied on "federal anti-trust case law," was "inconsistent with later court decisions directly

applying Section 16600.");  Comedy Club, Inc. v. Improv W. Associates, 553 F.3d 1277, 1293-

94 (9th Cir. 2009) (Overturning arbitration award of nationwide ban on §16600 grounds and

limiting in-term non-competition provisions to counties where licensee "operated" licensed

comedy clubs.).   As to both in-term and post-term covenants, "[s]ection 16600 expresses

California's strong public policy of protecting the right of its citizens to pursue any lawful

employment and enterprise of their choice."  Dowell v. Biosense Webster, Inc., 179 Cal.App.4th

---

[7]  There are three statutory exceptions to this prohibition, none of which is applicable here. One who sells a business may agree with a buyer not to carry on a similar business (Cal. Bus. & Prof. Code § 16601); a partner may agree not to carry on a similar business (Cal. Bus. & Prof. Code §16602); and a member of a limited liability company may agree not to carry on a similar business (Cal. Bus. & Prof. Code §16602.5).

564, 575, 102 Cal. Rptr. 3d 1, 8-9 (2009). [8]   Moreover, the use of an illegal noncompete agreement also violates California's Unfair Competition law.  It's Just Lunch, 2008 WL 4683637 at *3. Here, the Tripathis have brought a 17200 challenge to the non-compete.  Complaint ¶ 68.

> **g.      California's law barring exculpatory contracts is statutory and is a fundamental public policy.**

California law prohibits exculpatory contracts.  "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."  Cal. Civ. Code § 1668.  Under "section 1668, 'a party [cannot] contract away liability for his fraudulent or intentional acts or for his negligent violations of statutory law,' regardless of whether the public interest is affected." Health Net of California, Inc. v. Department of Health Services, 113 Cal.App.4th 224, 234, 6 Cal.Rptr.3d 235 (2003), citation omitted.  Section 1668 represents a fundamental public policy.  Klussman, supra, 134 Cal.App.4th at 1299. While Connecticut has similar policies, Town of New Hartford v. Connecticut Resources Recovery Auth., UWYCV0401855802X02, 2006 WL 2730965, at *3 (Conn. Super. Sept. 11, 2006), they are not codified by statute.

> **h.      California's law prohibiting liquidated damages is statutory and is a fundamental public policy.**

Section 8.f. of DAI's franchise contract has a liquidated damages provision that after termination the franchisee is liable to "pay us $250 per day for each day you are in default, as being a reasonable pre-estimate of the damages we will suffer."  California law prohibits such

---

[8] Many non-California courts have found section 16600 trumps a foreign choice of law provision.  Martino v. Cottman Transmission Systems, Inc., 218 Mich.App. 54, 554 N.W.2d 17 (1996); Lifestyle Imp. Centers, LLC v. E. Bay Health, LLC, 2:13-CV-735, 2013 WL 5564144, at *9 (S.D. Ohio Oct. 7, 2013); Contech Const. Products, Inc. v. Blumenstein, 1:11CV878, 2012 WL 2871425, at *11 (S.D. Ohio July 12, 2012) ("The Court concludes that application of Ohio law to the issue of the validity of the non-compete provision of the Agreement would be contrary to the public policy of California.")

penalties.  A "provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671(b).  The district court in In re DirecTV Early Cancellation Litig., 738 F. Supp. 2d 1062 (C.D. Cal. 2010) held that section 1671 reflected a public policy for purposes of a choice of law analysis and held that application of Florida law would violate California's public policies reflected because Florida did not have a similar statute.  Id. at 1090.   While Connecticut has a similar policy, Am. Car Rental, Inc. v. Comm'r of Consumer Prot., 273 Conn. 296, 306, 869 A.2d 1198, 1205-06 (2005), it is not codified by statute.

> **i.** **California's law barring one-way attorney fees is statutory and is a fundamental public policy.**

California law makes a one-way contractual attorney's fee provision mutual by operation of law.   Cal. Civ.Code § 1717 (a).  In Ribbens Intern'l, S.A. de C.V. v. Transport Intern'l Pool, Inc., 47 F.Supp.2d 1117, 1122 (C.D.Cal. 1999), the court found section 1717 (a) embodied a fundamental California policy. "This language is mandatory, unavoidable and emphatic…it represents a basic and fundamental policy choice by the state of California that nonreciprocal attorney's fees contractual provisions create reciprocal rights to such fees."  The court then voided the Pennsylvania choice-of-law provision because application of Pennsylvania law would conflict with section 1717.  Id.; see also First Intercontinental Bank v. Ahn, 798 F.3d 1149, 1157-58 (9th Cir. 2015) ("[W]e are persuaded that if the issue were presented to the California Supreme Court, it would conclude that Civil Code § 1717 reflects a fundamental policy of the state of California, and we hold that it is.").  Connecticut has no statutory provisions that would override the one-way attorney fee provisions in the arbitration agreement.  Retained Realty, Inc. v. Spitzer, 643 F. Supp. 2d 228, 232-33 (D. Conn. 2009) (Conn. Gen.Stat. § 42–150bb.1 applies to consumer contracts where the "the money, property or service that is the subject of the transaction is primarily for personal, family or household purposes.").

> **j.      California has a materially greater interest than Connecticut in policing this unconscionable contract.**

The third question is whether the state whose law would otherwise apply has a materially greater interest than the chosen state in deciding the particular issue, here, unconscionability of the arbitration provisions.  The <u>Bridge Fund</u> court held that California had such materially greater interest: "The final question, then, is which state has the materially greater interest in having its law regarding unconscionability of arbitration agreements enforced in this case. We agree with the district court that California has the greater interest."  <u>Bridge Fund</u>, 622 F.3d at 1004; <u>see</u> <u>also</u> <u>Bencharsky v. Cottman Transmission Sys., LLC</u>, 625 F. Supp. 2d 872, 878-80 (N.D. Cal. 2008) (Because principal harm was committed in California on its citizens and in light of California's interest in protecting franchisees, California has a materially greater interest than Pennsylvania and therefore "the choice-of-law provision in the parties' agreement is unenforceable for purposes of determining the validity of the arbitration provision. This Court will therefore apply California law in determining whether the arbitration clause is unconscionable.").  For the above reasons, this Court should apply California law to the unconscionability inquiry presented here.

> **2.      DAI's arbitration agreement is procedurally unconscionable.**

Under California law, "unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." <u>Armendariz v. Found. Health Psychcare Servs., Inc.</u>, 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000) (citation and internal quotes omitted). Both elements must be present, but courts employ a "sliding scale," whereby a stronger showing on one may make up for a weaker showing on the other. <u>Id</u>.  The procedural element of an unconscionable contract generally takes the form of a contract of adhesion. <u>Nagrampa v. MailCoups, Inc.</u>, 469 F.3d 1257, 1281 (9th Cir. 2006). Neither the availability of substitute employment, nor the sophistication of a party, can, by themselves, defeat a claim of procedural unconscionability. <u>Id.</u> at 1283. Additionally, a "claim of unconscionability often cannot be

determined merely by examining the face of a contract, but will require inquiry into its [commercial] setting, purpose, and effect." Perdue v. Crocker National Bank, 38 Cal. 3d 913, 926, 702 P.2d 503 (1985).

Case law has often found that franchise agreements are adhesion contracts. Nagrampa, 469 F.3d at 1282. The Bridge Fund court found procedural unconscionability where there was "an absence of real negotiation and a disparity of bargaining power ... between the parties." Bridge Fund 622 F.3d at 1004. Here, DAI's standard form agreement with prolix terms and arbitration clauses was presented to the Tripathis on a take it or leave it basis with no real negotiation of the terms. Tripathi Dec., ¶ 5. Moreover, DAI did not provide the AAA Rules to the Tripathis. Tripathi Dec. ¶ 11. In Pokorny v. Quixtar, Inc., the court held that failure to attach the arbitration rules "multipl[ies] the degree of procedural unconscionability." 601 F.3d at 996–97. In sum, DAI's arbitration agreement is procedurally unconscionable under California law.

### 3.    DAI's arbitration clause is substantively unconscionable.

"Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071-1072 (2003) The California Supreme Court recently observed "[n]ot all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: "overly harsh," "unduly oppressive," "unreasonably favorable" ….We clarify today that these formulations, used throughout our case law, all mean the same thing." Sanchez v. Valencia Holding Co., LLC, 61 Cal. 4th 899, 911, 353 P.3d 741, 749 (2015). The Sanchez court noted that unconscionability manifests itself in different ways depending on the contract at issue and cited case law holding choice of law provisions, liability waivers, statute of limitation waivers, and forum selection provisions unconscionable for this proposition. Id. at 912. In the franchise and similar contexts, substantive unconscionability has been found where the arbitration agreements are not mutual, where place, manner, cost-shifting, and damages restrictions favor the franchisor, or where tandem forum selection and choice of law provisions work to deprive a party of rights and remedies. Here, DAI's scheme violates these principles.

### a.      The arbitration agreement is not mutual.

The arbitration agreement gives DAI alone access to a court to obtain damages, injunctive and equitable relief over the panoply claims that it is most likely to bring against franchisees.  Agreement, ¶ 10.e.   California courts have universally found such a lack of mutuality substantive unconscionable.  As the California Supreme Court held in Armendariz, substantive unconscionability may manifest itself in the form of "an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." Armendariz, supra, 24 Cal.4th at 119.  In O'Hare v. Municipal Resource Consultants, 107 Cal.App.4th 267, 277, 132 Cal.Rptr.2d 116 (2003), the arbitration clause required an employee to arbitrate all claims against the employer but permitted the employer to file a lawsuit seeking injunctive and equitable relief.  The court rejected the employer's contention that it had a legitimate business justification for the lack of mutuality and refused enforcement on unconscionability grounds. Id. at 277-278.  Similarly, the court in Martinez v. Master Protection Corp., 118 Cal.App.4th 107, 12 Cal.Rptr.3d 663 (2004), held a non-mutual arbitration agreement unconscionable.  Like DAI's agreement here, the agreement exempted "claims by [FireMaster] for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information." Id., 118 Cal.App.4th at 115.

Bridge Fund also found that unconscionability where "terms granting the party of greater bargaining power the right to seek injunctive relief in court while denying such relief to the weaker party" where "the only business justification offered by Fastbucks for the non-mutual judicial remedy provision was its need to seek provisional remedies, which is insufficient under California law to justify non-mutuality…" Bridge Fund 622 F.3d at 1005; see also, Stirlen v. Supercuts, Inc., 51 Cal.App.4th 1519, 1539-42, 60 Cal.Rptr.2d 138 (1997) (finding an arbitration provision unconscionable where employment disputes were required to be submitted to arbitration but breach of non-compete or confidentiality clause claims could be brought in court);

Like the contracts in Bridge Fund, Martinez, O'Hare, and Stirlen, the instant agreement

requires that Tripathis submit to arbitration any controversy related to the franchise agreement while reserving DAI's right to obtain any damages, injunctive relief, and other remedies in court for the claims that it would most likely bring against franchisees. Agreement, ¶ 10.e.  California courts have consistently held such arbitration provisions unconscionable.

> **b.      The arbitration clause improperly limits punitive damages and completely exculpates DAI's agents from liability.**

DAI's arbitration agreement bars the recovery of exemplary or punitive damages and wholly exempts agents such as Patel and Letap from all manner of liability. Franchise Agreement, ¶¶ 10.d. and 10.g.  "An arbitration clause that is so one-sided as to deprive the weaker party of substantive claims, or the right to punitive damages recovery, is against public policy and unconscionable." Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court, 133 Cal. App. 4th 396, 412, 34 Cal. Rptr. 3d 659, 672 (2005).  DAI may argue that the punitive damages limitation is enforceable because it is bilateral but it would be mistaken. Although bilateral as drafted, such terms practically and unduly favor DAI and its agents.  Pardee Construction Co. v. Superior Court, 100 Cal.App.4th 1081, 1091, 123 Cal.Rptr.2d 288 (2002). "Franchis[o]rs ⋯ are probably less likely to sue their franchisees than vice versa. Even when such suits are brought, they would be more likely to sound in the damages-limited field of contract than in tort."  Woodside Homes of Cal., Inc. v. Superior Court, 107 Cal.App.4th 723, 734-735, fn. 16, 132 Cal.Rptr.2d 35 (2003).

DAI would also be wrong that Tripathis have not asserted a claim that might yield punitive damages. The Tripathis have alleged that Patel and Letap group tortiously interfered with their contracts.  "In an action for the breach of an obligation not arising from contract…the plaintiff….may recover damages…by way of punishing the defendant." Cal. Civ. Code § 3294 (a).  In sum, while the arbitration provision precluding the arbitrators from awarding or punitive damages is seemingly bilateral on its face, it operates to the unduly one-sided benefit of DAI and its agents.

### c.   The arbitration clause improperly limits economic damages

Under DAI's arbitration scheme, no consequential damages may be awarded and actual damages are capped at $100,000.  Franchise Agreement, ¶ 10g.  Courts have treated such limitations in the same way as punitive damage bars noted in the preceding section. "The arbitration agreements should not be interpreted as written to deprive the arbitrators of authority to award punitive, consequential, or incidental damages, such as lost wages and/or profits, or attorney's fees and/or costs, to the extent these would otherwise be available under the substantive causes of action asserted. To the extent that the arbitration clauses in this respect seek to deprive plaintiffs of statutorily authorized remedies, or relief in court that would otherwise be allowable to them, they are unconscionable…"  Indep.  Ass'n of Mail Box Ctr. Owners, supra, 133 Cal.App.4th at 412-413.

### d.   Place and manner restrictions and cost shifting provisions render the arbitration clause unconscionable.

Place and manner restrictions can render an arbitration clause unconscionable. Nagrampa, 469 F.3d at 1287.  In Nagrampa, 469 F.3d at 1288–90, the Ninth Circuit also factored into its unconscionability analysis the hardship the forum selection clause would impose on the franchisees in traveling to the out-of-state forum, the significant California protections that would be lost if another state's laws were applied to the arbitration, and the unequal bargaining power of the parties resulting in an oppressive contract in adhesion, concluding that the forum selection provision was unconscionable. See also, Capili v. Finish Line, Inc., 116 F. Supp. 3d 1000, 1006-07 (N.D. Cal. 2015) (finding the provision of the employment agreement requiring that disputes be submitted to arbitration in Indiana substantively unconscionable); Comb v. PayPal, Inc., 218 F. Supp. 2d 1165, 1177 (N.D. Cal. 2002) ("Limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes.").

The arbitration clause at issue here provides that disputes will be heard in Bridgeport, CT under the American Arbitration Association ("the AAA") commercial expedited rules that

require hearing on a compressed time frame with no opportunity for discovery.  Such provisions
are unconscionable.  <u>Armendariz</u>, 24 Cal.4th at 106 (holding that plaintiffs "are entitled to
discovery sufficient to adequately arbitrate their statutory claims, including access to essential
documents and witnesses").  Here, that the time and manner provisions limit the Franchisees'
rights to vindicate their claims is highlighted by the provision that the arbitration is to be heard
within about four weeks of filing allowing no time for any discovery or to prepare the case.  ("In
cases in which a hearing is to be held, the arbitrator shall set the date, time, and place of the
hearing, to be scheduled to take place within 30 calendar days of confirmation of the arbitrator's
appointment.").  AAA Expedited Rules, Rule E-7. It is not simply possible to prepare a case
within such a short time and such manner restrictions are unconscionable.  <u>See  Bridge Fund</u>
<u>Capital Corp. v. Fastbucks Franchise Corp.</u>, No. 2:08CV00767-MCE-EFB, 2008 WL 3876341,
at *10 (E.D. Cal. Aug. 20, 2008), aff'd and remanded, 622 F.3d 996 (9th Cir. 2010) ("Plaintiffs
point to provisions requiring Texas choice of law and forum and requiring arbitration to
commence two weeks following the initial meeting of the parties" and "[a]ccordingly, the
arbitration provisions' place and manner restrictions add yet another layer of substantive
unconscionability.").

     The arbitration scheme also seeks to impose intimidating cost shifting provisions.  For
example, the clause provides "The costs of the arbitration will be borne equally by the parties,
except as otherwise provided in this Agreement." ¶10.a.  However, the agreement provides
otherwise in section 10.d and 10.e. "<u>If you</u> name a party in any arbitration or litigation
proceeding in violation of this Subparagraph 10 d., <u>you will reimburse us for reasonable costs</u>
<u>incurred, including but not limited to, arbitration fees, court costs, lawyers' fees, management</u>
<u>preparation time, witness fees, and travel expenses incurred by us or the party</u>." ¶10.d., emphasis
added.  "Subject to federal or state law, if a party defaults under any other provision of this
Paragraph 10, or under any provision of Paragraph 17 or Paragraph 18, including, but not limited
to, making a claim for special, incidental, consequential, punitive, or multiple damages, or
damages in excess of the amount permitted under this Agreement, <u>or you name a person or entity</u>

<u>in any arbitration or legal proceeding other than us</u>, the defaulting party must correct its claim. <u>The defaulting party will be responsible for all expenses incurred by the other party, or the improperly named persons or entities, including lawyers' fees, and will be liable for abuse of process</u>. ¶ 10.e., emphasis added.

As noted, these provisions are not even mutual. DAI intends to alternatively exculpate its agents, bind its agents to the arbitration scheme, and then pass off all the associated costs that both it and its agent incurs if and when arbitration is invoked.  Arbitration was not meant for this purpose. <u>Chavarria v. Ralphs Grocer Co</u>., 812 F. Supp. 2d 1079, 1088 (C.D. Cal. 2011), <u>aff'd and remanded sub nom</u>. <u>Chavarria v. Ralphs Grocery Co</u>., 733 F.3d 916 (9th Cir. 2013) ("The Policy's fee allocation structure creates a substantial economic barrier to justice. The terms of the Policy therefore defeat the very purpose of arbitration…").  Requiring the Tripathis to pay <u>all of the costs of arbitration</u> (for both DAI and its agents), pay the agents' travel costs, management preparation time and the like simply because the Tripathis allege they were harmed by DAI's agents and seek redress for that harm is patently unconscionable.  As is making the Tripathis liable for "abuse of process" for exercising their rights.[9]  Clearly, these are "overly harsh or one-sided results" that render the provision substantively unconscionable.  <u>Armendariz</u>, 24 Cal. 4th at 114.  Finally, it is obviously one-sided and impractical to require the Tripathis to arbitrate against Patel and Letap in Connecticut.

---

[9] Inclusion of this provision is purely for intimidation and chilling purposes.  <u>Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc</u>., 42 Cal.3d 1157, 1169, 232 Cal.Rptr. 567, 574, 728 P.2d 1202, 1209 (1986). (Courts have made clear that the "mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action."); <u>Mohamed v. Uber Techs., Inc</u>., 109 F. Supp. 3d 1185, 1209 (N.D. Cal. 2015) (Moreover, such a rule would also significantly chill drivers in the exercise of their rights under the relevant agreements. A driver reviewing the "Paying for the Arbitration" section of the contracts could easily conclude that she would be required to pay arbitral fees simply to begin arbitration—a conclusion which could seriously discourage the driver from attempting to vindicate his or her rights as a putative employee in any forum. The Court cannot sanction such a result.").

      **e.**     **The arbitration clause improperly seeks to void the California Franchise Relations Act, an unwaivable statute, through Connecticut choice of law and forum.**

DAI' seeks to negate the California Franchise Relations Act, an unwaivable statute, via a Connecticut forum selection and choice of law.  Here, DAI seeks to compel arbitration of the Tripathi's statutory claims in Connecticut, before a Connecticut arbitrator that will be bound to apply Connecticut law.  Such choice of law provisions and forum selection provisions have been routinely struck down with respect to unwaivable statutory claims. Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1267 (9th Cir. 2006); Bridge Fund, supra, 622 F.3d at 1004.

      **f.**     **Because of the multiple defects in DAI's arbitration scheme, the remedy here is to deny DAI's Petition in its entirety.**

In Armendariz, the California Supreme Court declined to enforce an arbitration clause where multiple unlawful provisions indicated an effort to impose arbitration as an inferior forum. "Such multiple defects indicate a systematic effort to impose arbitration on an employee ... as an inferior forum that works to the employer's advantage." Id., 24 Cal.4th at p. 124.  The Armendariz court noted that severing illegal provisions had the harmful effect of rewarding the dominant party for bad faith conduct and condoning an illegal scheme.

> An employer will not be deterred from routinely inserting such a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter. In that sense, the enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning, or at least not discouraging, an illegal scheme, and severance would be disfavored unless it were for some other reason in the interests of justice. The refusal to enforce such a clause is also consistent with the rule that a party may waive its right to arbitration through bad faith or willful misconduct.

Armendariz, 24 Cal. 4th at 124, fn. 13 (citations omitted); Bridge Fund, supra, 622 F.3d at 1004. (Upholding a finding of that the arbitration agreement was "permeated" by unconscionability and that the "interests of justice favored refusal to enforce the arbitration provision in its entirety.").

DAI's arbitration agreement cannot be cured by striking or limiting application of certain provisions. Rather, it is so "'permeated' by unconscionability [it] could only be saved, if at all, by a reformation beyond [the Court's] authority." Mercuro v. Superior Court, 96 Cal.App.4th 167, 182, 116 Cal.Rptr.2d 671 (2002); Martinez v. Master Protection Corp., 118 Cal. App. 4th 107, 119-120, 12 Cal.Rptr.3d 663 (2004) (Because the "arbitration agreement is permeated with illegality and unconscionability, it is unenforceable…."); Chavarria, supra, 812 F. Supp. 2d at 1089 ("Ralphs' arbitration policy lacks any semblance of fairness…[t]o condone such a policy would be a disservice to the legitimate practice of arbitration and a stain on the credibility of our system of justice.").  DAI's arbitration clause covers almost every base of substantive unconscionability: lack of mutuality, improper exculpatory provisions, improper cost shifting, limits on discovery, remedies, and damages, and otherwise operates to insulate DAI and its agents from California public policy via tandem choice of law and forum provisions.

Finally, any willingness on DAI's part to waive the unconscionable provisions in its arbitration agreement does not cure the problem. Armendariz, 24 Cal.4th at 125, 99 Cal.Rptr.2d 745, 6 P.3d 669, citation omitted ("No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it.").  Moreover, California Appellate Courts have recognized, the mere inclusion of these unconscionable provisions has an improper chilling effect notwithstanding a belated willingness to waive them. See Martinez, 118 Cal.App.4th at 117, 12 Cal.Rptr.3d 663 ("The mere inclusion of the costs provision in the arbitration agreement produces an unacceptable chilling effect, notwithstanding [the employer's] belated willingness to excise that portion of the agreement."). In sum, permitting the arbitration agreement to stand because DAI might waive numerous unconscionable provisions would provide a perverse incentive to pack arbitration agreements with unenforceable provisions.  The Court ought not to reward such a tactic.

### F.    DAI's arbitration scheme is void as against public policy

Independent of unconscionability, an arbitration scheme designed to strip California statutory rights and claims of is void against public policy. The United States Supreme Court and

the California Supreme Court both hold that arbitration is to provide a substitute forum for dispute resolution but is not to derogate substantive rights.  Armendariz , supra, 24 Cal.4th at 98-99, citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 628, 105 S.Ct. 334, 687 L.Ed.2d 444  (1985) ("[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum."); see also  Nagrampa, supra, 469 F.3d at 1289. ("California courts refuse to enforce arbitration provisions on public policy grounds if they impede the enforcement of unwaivable statutory rights.")  Here, the arbitration scheme contained multiple provisions designed to impede the Franchisees' ability to vindicate their statutory claims including arbitration in Connecticut, Connecticut choice of law, limits on damages, exculpatory provisions, one-way fee and cost shifting provisions designed chill the exercise of rights, and only a few weeks from arbitrator selection to hearing allowing virtually no time for discovery or to adequately prepare the case.   All of these provisions substantially hinder or eliminate the Tripathi's ability to vindicate their unwaivable statutory claims.

### G.    DAI's Petition should be denied because it has unclean hands.

DAI's motion to compel arbitration is, in essence, a request for specific performance and open to equitable defenses.  Kulukundis Shipping Co., S/A, v. Amtorg Trading Corp., 126 F.2d 978, 986-87 (2d Cir. 1942).  The doctrine of unclean hands bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted. See Pond v. Insurance Co. of North America, 151 Cal.App.3d 280, 289–90, 198 Cal.Rptr. 517, 522 (1984). "It is fundamental to [the] operation of the doctrine that the alleged misconduct by the plaintiff relate directly to the transaction concerning which the complaint is made." Arthur v. Davis, 126 Cal.App.3d 684, 693–94, 178 Cal.Rptr. 920, 925 (1981) (quotation omitted); Jade Fashion & Co. v. Harkham Indus., Inc., 229 Cal. App. 4th 635, 653-54, 177 Cal. Rptr. 3d 184, 200 (2014) ("The doctrine of unclean hands is a defense available in both legal and equitable actions.").  Here, the very nature of the unconscionable provisions show DAI's bad faith in seeking to impose

arbitration as an inferior forum and to chill its franchisees from asserting claims.  DAI has this "dirtied [its] hands in acquiring the right presently asserted" and the Petition should be denied.

> **H.      DAI's petition should be denied because there was no meeting of the minds on arbitration; in the alternative, arbitration should be held in California.**

As noted above in section E.1.b., there was no meeting of the minds between DAI and the Tripathis over the key arbitration provisions.  California courts have held that such failure warrants setting aside entire arbitrations scheme.  <u>Winter v. Window Fashions Professionals, Inc.</u>, 166 Cal. App. 4th 943, 950, 83 Cal. Rptr. 3d 89, 95 (2008) ("the trial court correctly relied on <u>Laxmi</u> to hold that the arbitration provision was not enforceable because there was no meeting of the minds between respondents and appellants as to that agreement to arbitrate.).  Other courts have not gone quite as far striking the entire arbitration scheme but have struck down the forum and choice of law provisions.  <u>Roberts v. Synergistic Int'l, LLC</u>, 676 F. Supp. 2d 934, 949-51 (E.D. Cal. 2009) ("Although there was no meeting of the minds on the forum, jurisdiction, and choice of law clauses of the arbitration agreement, they parties did agree to a dispute resolution program as described in Section 14 of the Franchise Agreement.").  Thus, at a minimum, arbitration should be had in California.

## IV.     <u>CONCLUSION</u>

The Court should deny the Petition to the extent it seeks to compel arbitration of non-arbitrable controversies such as the Tripathis' California challenge to the Connecticut judgment and their request to enjoin unauthorized arbitrations.  The Court should "look through" the Petition and dismiss it for lack of diversity jurisdiction because Patel and Letap are in effect parties or they are indispensable.

Alternatively, the Court should dismiss the Petition under the <u>Colorado River</u> abstention doctrine in favor of the first-filed California case, which has jurisdiction over all the necessary parties.  Barring dismissal, the Court should transfer the Petition to the Northern District of

California.

Finally, if the Court declines dismiss, abstain, or transfer, it should find DAI's arbitration scheme unconscionable under California law or that DAI has acted with unclean hands. DAI would no doubt prefer that this Court enforce all arbitration agreements regardless of how they were obtained or the public policy and statutory protections they would avoid. However, in applying California's unconscionability rules to DAI's arbitration scheme, this Court engages in an undertaking expressly authorized by the Federal Arbitration Act. For these reasons, this Court should dismiss or deny DAI's Petition.

Respectfully submitted,

DATED:  May 17, 2016                        By:

Of Counsel:                                 Allan P. Hillman
Robert S. Boulter                           Kern & Hillman, LLC
rsb@boulter-law.com                         2911 Dixwell Avenue
1101 Fifth Avenue, Suite 235                Suite 203
San Rafael, California 94901-1828           Hamden, CT 06518
P. (415) 233-7100                           Bar # CT 27489
F. (415) 233-7101                           P. (203) 782-9076
California Counsel For Defendants           F. (203) 782-9081
                                            allan@franchiselawsource.com
                                            Attorneys for Defendants

# CERTIFICATE OF SERVICE

In accordance with the Federal Rules of Civil Procedure and Local Rule of Civil Procedure 5(c), I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of Court and served upon all counsel in accordance with the Electronic Filing Policies and Procedures.

Allan P. Hillman