# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
DOCTOR'S ASSOCIATES, INC.    :    Civ. No. 3:16CV00562 (JCH)
                             :
v.                           :
                             :
MANOJ TRIPATHI &             :
SADHANA TRIPATHI             :    November 3, 2016
                             :
-----------------------------x
```

## RECOMENDED RULING RE: PLAINTIFF'S PETITION TO COMPEL ARBITRATION [DOC. #1], DEFENDANTS' MOTION TO DISMISS [DOC. #16], AND PLANTIFF'S MOTION FOR PRELIMINARY AND/OR PERMANENT INJUNCTION [DOC. #33]

## I.    INTRODUCTION

Plaintiff Doctor's Associates, Inc. ("DAI" or "plaintiff") has filed a Petition to Compel Arbitration (hereinafter sometimes referred to as the "Petition") [Doc. #1] against defendants Manoj Tripathi and Sadhana Tripathi (collectively the "defendants" or the "Tripathis") in connection with a complaint filed by the Tripathis in California state court. Also before the Court is DAI's Motion for Preliminary and/or Permanent Injunction [Doc. #33], which seeks to enjoin the Tripathis from litigating the California state court action. In addition to opposing DAI's Petition to Compel Arbitration on, _inter alia_, unconscionability grounds [Doc. #17], the Tripathis have also filed a Motion to Dismiss, Abstain, and/or Transfer Action to California ("Motion to Dismiss") [Doc. #16]. The Tripathis argue

1

that DAI improperly failed to name two indispensable parties to the Petition to Compel Arbitration, and that necessary inclusion of those parties destroys this Court's diversity jurisdiction. See Doc. #16-1. The Tripathis also argue, in the alternative, that this Court should abstain from exercising its jurisdiction because of the parallel state court action, or should transfer this matter to the Northern District of California under the first-filed action rule. See id.[1]

For the reasons articulated below, the Court finds that the defendants entered into a franchise agreement containing a classically broad arbitration clause, which clearly and unmistakably delegates issues of arbitrability to the arbitrator, and thus gateway issues such as unconscionability of the arbitration agreement are for the arbitrator's determination in the first instance. Therefore, the Court recommends that the defendants' Motion to Dismiss [**Doc. #16**] **be DENIED,** DAI's Petition to Compel Arbitration [**Doc. #1**] be **GRANTED,** and that DAI's Motion for Preliminary and/or Permanent Injunction [**Doc. #33**] be **GRANTED.**

---

[1] Briefing in this matter has been extensive and the Court has considered all oppositions, replies, and sur-replies filed in connection with the three pending motions.

## II.  <u>FACTUAL BACKGROUND</u>

Plaintiff DAI is the national franchisor of Subway sandwich shops and is a Florida corporation, with its headquarters located in Milford, Connecticut. <u>See</u> Doc. #1 at ¶2; <u>see also</u> Doc. #26-1, August 1, 2016, Declaration of Ralph Piselli ("Piselli Dec.") at ¶¶4-5. Defendants are California residents. <u>See</u> Doc. #1 at ¶3; <u>see also</u> Doc. #16-2, May 17, 2016, Declaration of Manoj Tripathi Supporting 1) Motion to Dismiss, Abstain and/or Transfer Action to California and 2) Opposition to Motion to Compel Arbitration ("Tripathi Dec.") at ¶2. Between November 15, 2001, and February 6, 2011, defendants and DAI entered into eleven written franchise agreements, which permitted defendants to operate Subway restaurants in California. <u>See</u> Doc. #1 at ¶6; <u>see also</u> Doc. ##1-1, 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 1-11 (franchise agreements). On December 13, 2012, defendants executed a superseding franchise agreement. <u>See</u> Doc. #1 at ¶6; <u>see also</u> Doc. #1-12 (2012 franchise agreement). In total, defendants have purchased more than 30 Subway franchises from DAI since 2001. <u>See</u> Doc. #16-2, Tripathi Dec. at ¶2.

Each of the franchise agreements contains a dispute resolution clause requiring the parties to arbitrate any dispute or claim arising out of or relating to the franchise agreements. <u>See generally</u> ##1-1, 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-

3

10, 1-11; see Doc. #1-12 at ¶10 (hereinafter the "Arbitration Clause").[2] The controlling version of the Arbitration Clause provides, in relevant part: "Any dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration." Doc. #1-12 at ¶10a. The Arbitration Clause further dictates that arbitration be held in Bridgeport, Connecticut, and that the "[a]ny disputes concerning the enforceability or scope of the arbitration clause shall be resolved pursuant to the Federal Arbitration Act, 9 U.S.C. § et seq. ('FAA')[.]" Id. at ¶10b, f (sic).

On March 23, 2016, defendants filed a lawsuit against DAI, its development agent Chirayu Patel ("Patel"), and Patel's company, Letap Group, LLC ("Letap") in California Superior Court. See Doc. #1 at ¶10; see also Doc. #16-3, Ex. A (California state court complaint). Pertinent to the discussion below, defendants allege that Patel and Letap are California residents. See id. at 4-5. Defendants further allege that the "case arises out of [DAI's], Patel's and the Letap Group's persistent unlawful activity against the Tripathis' franchises beginning in 2015 and continuing to the present day." Id. at 5.

---

[2] Paragraph 14 of the 2012 franchise agreement "amends all ... existing franchise agreements with [DAI.]" Doc. #1-12 at ¶14. Accordingly, and the parties do not appear to dispute, that the Arbitration Clause set forth in paragraph 10 of the 2012 franchise agreement (Doc. #1-12) governs here.

Defendants further allege that their damages exceed one million dollars. See id. at 13.

According to the allegations of defendants' state court complaint, DAI uses development agents, which are independent contractors, to assist in the managing of the Subway franchise system. See Doc. #16-3 at 7. Defendants allege that "[i]n 2015, Patel and Letap became the Development Agent over the [Tripathis]" and began a "systematic fraud scheme ... to grow their own Subway franchise empire by instigating [DAI] to terminate franchises in Northern California and then cede them to Patel or others of his choosing." Id. Defendants allege that Patel and his team at Letap "performed many trumped up and negative evaluations of the Tripathis' stores ... and then, in many cases, falsely and/or misleadingly reported to [DAI] that the Tripathis had various food safety issues and other significant operating issues with the knowledge and intent that [DAI] would terminate such franchises." Id. at 7-8. Based on these reports, DAI allegedly "instituted unauthorized and unlawful arbitration proceedings for the purposes of terminating the Tripathis' franchises." Id. at 8. Defendants assert the following causes of action in the California complaint: (1) Breach of Written Contract and Good Faith Covenant (vs. DAI); (2) Violation of the California Franchise Relations Act (vs. DAI); (3) Inducing Breach of Contract – Intentional Interference

5

with Contractual Relations (vs. Patel, Letap and Does 1-10); (4) Conversion and Civil Theft (vs. DAI and Does 1-10); (5) Declaratory Relief as to defendants' rights and obligations under the franchise agreements (vs. DAI, Patel and Letap); and (6) Business and Professional Code §17200 Violations (vs. DAI, Patel, Letap and Does 1-10). See generally Doc. #16-3. In addition to seeking specific performance of the franchise agreements and monetary damages, defendants also ask the California court to, inter alia, "enjoin[] any arbitration proceedings that [DAI] or Patel has instituted or might institute against [the Tripathis.]" Id. at 19.

DAI filed the instant Petition to Compel Arbitration on April 8, 2016 [Doc. #1], to which defendants filed an opposition and Motion to Dismiss. [Doc. ##16, 17]. On October 3, 2016, DAI filed a Motion for Preliminary and/or Permanent Injunction requesting that the Court enjoin defendants from prosecuting the claims in the California state court proceedings. [Doc. #33]. Specifically, DAI alleges that defendants have filed a motion in the California state court seeking an "order that ... DAI will never be entitled to a stay of this matter under the California Arbitration Act or the Federal Arbitration Act and that DAI's arbitration clause with the Tripathis is unconscionable and unenforceable." Doc. #33-2 at 1. There is a hearing scheduled on

6

November 9, 2016, before the California state court to address the merits of the defendants' motion. See id. at 2.

Because the Court cannot act on DAI's Petition to Compel Arbitration if there is a lack of subject-matter jurisdiction, the Court turns first to defendants' Motion to Dismiss.

### III. **DISCUSSION**

**A. Motion to Dismiss, Abstain and/or Transfer Action to California [Doc. #16]³**

  1. Challenges to the Connecticut Judgment

Defendants first contend that the Court should dismiss the Petition to the extent it seeks to compel arbitration of defendants' California challenge to a Connecticut state court judgment entered in DAI's favor and to enjoin ongoing unauthorized arbitration proceedings. See Doc. #16-1 at 19.

Before defendants filed the California state court action, DAI filed a Demand for Arbitration with the American Dispute Resolution Center ("ADRC") alleging that defendants had breached

---

³ On May 17, 2016, defendants filed their Motion to Dismiss with a Memorandum in Support and a Memorandum in Opposition to the Petition to Compel Arbitration. [Doc. ##16-1, 17]. These memoranda are identical. In addressing the Motion to Dismiss arguments, the Court will reference the memorandum at docket entry 16-1. In addressing defendants' arguments in opposition to the Petition to Compel, the Court will reference the memorandum at docket entry 17. The Court further refers to ECF header page numbers, rather than any page numbering in the body of the documents, throughout this discussion.

several franchise agreements.[4] Defendants appeared for arbitration before the ADRC and submitted evidence. After considering all of the evidence, the arbitrator found defendants breached three franchise agreements entered into with DAI.

Defendants were provided notice of the arbitral award, but did not object or otherwise seek to modify the award. Accordingly, on December 15, 2015, DAI filed an Application to Confirm Arbitration Award in Connecticut Superior Court. Although defendants were served with a summons and the Application, the defendants failed to appear and a Judgment without Trial was entered on January 11, 2016. DAI filed an action in Contra Costa County, California, seeking to domesticate the Connecticut judgment. The California action seeking to bar the instant disputes was filed by defendants on March 23, 2016, in Marin County, California.

Defendants first contend that "[c]hallenges to court judgments affirming an arbitration award are not arbitrable[,]" and represent that the complaint pending in Marin County alleges that the Connecticut judgment is invalid. Doc. #16-1 at 19. Although defendants will purportedly "raise these arguments in defense to any enforcement proceedings," it is the position of the defendants that the California court in Marin County has

---

[4] This background is generally derived from the Tripathi Declaration and the attached exhibits. See Doc. #16-2.

authority to decide the issue of the validity of the Connecticut judgment. See id. DAI responds that defendants "misconstrue the Petition to Compel, which simply seeks to require the [defendants] to arbitrate the claims asserted in their lawsuit for damages pending in Marin County, California." Doc. #26 at 6. Additionally, defendants note the pendency of the other separate action in Contra Costa County, California, in which DAI has sought domestication of the Connecticut judgment. See id. In that regard, "DAI agrees that an action domesticating an already court-confirmed arbitration award is appropriately filed in a court in the state where domestication is sought. That action is the appropriate place for the [defendants] to make their arguments" challenging the Connecticut judgment. Id.

The Court declines to dismiss the Petition on grounds relating to a challenge of the Connecticut judgment. First, the Court credits the representation of DAI's counsel that the Petition "simply seeks to require the [defendants] to arbitrate the claims asserted in their lawsuit for damages pending in Marin County, California." Doc. #26 at 6. It is plain that DAI is not seeking to compel arbitration as to the domestication proceedings currently pending in Contra Costa County, California, or as to proceedings which would otherwise decide the domestication or validity of the prior Connecticut judgment. Moreover, any challenges to the Connecticut judgment are not

9

properly before this Court in deciding whether or not to compel arbitration. Rather, any such arguments should likely be made in the Contra Costa County action, where DAI seeks the domestication of the Connecticut judgment. In that regard, the record indicates that defendants have presented such arguments to the Contra Costa County court and will not be prejudiced by this Court's declination to consider the same. See generally Doc. #26-2 (defendants' Memorandum in Support of Motion to Vacate Sister State Judgment, arguing that the "Connecticut judgment and supporting arbitration award were rendered in excess of jurisdiction" and that "DAI is guilty of misconduct").

Second, to the extent the defendants attempt to collaterally attack the previously entered arbitration awards in the breach of contract count in the Marin County, California complaint, as discussed further below, it is for the arbitrator and not this Court to determine issues of arbitrability of any such claims. Accordingly, any arguments concerning whether defendants' California complaint's breach of contract claim are properly within the scope of the Arbitration Clause will be for the arbitrator's decision. Finally, defendants have not requested that this Court vacate the three arbitral awards with which defendants take issue. Accordingly, issues surrounding the existing Connecticut judgment provide no basis upon which to dismiss the Petition.

2. <u>Subject-Matter Jurisdiction</u>

Defendants contend that the Court should dismiss DAI's Petition to Compel Arbitration for lack of diversity jurisdiction. <u>See</u> Doc. #16-1 at 20. Defendants argue that DAI's petition "expressly asks the Court to compel arbitration with Patel and Letap although they are not named as parties[,]" which destroys the basis of diversity jurisdiction. <u>Id.</u> Alternatively, defendants contend that Patel and Letap are indispensable parties under Federal Rule of Civil Procedure 19, and that once they are joined in this action, diversity will be destroyed. <u>See id.</u> at 21. DAI responds that there is diversity jurisdiction and that its agents, namely Patel and Letap, are not indispensable parties. <u>See</u> Doc. #26 at 12-13. DAI also insists that it does not seek to compel arbitration against its agents. <u>See id.</u> at 14.

### a. Applicability of the "Look Through" Doctrine

DAI filed the Petition to Compel Arbitration pursuant to section 4 of the Federal Arbitration Act ("FAA"). <u>See</u> Doc. #1. The FAA "bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." <u>Doscher v. Sea Port Grp. Sec., LLC</u>, 832 F.3d 372, 380 (2d Cir. 2016) (quoting <u>Vaden v. Discover Bank</u>, 556 U.S. 49, 59 (2009)). Here, DAI alleges diversity of citizenship as a basis for the Court's subject-matter

11

jurisdiction. See Doc. #1. To invoke diversity jurisdiction, DAI "must show complete diversity — that is, that it does not share citizenship with any defendant." Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 445 (2d Cir. 1995) (collecting cases) (internal quotation marks omitted).

DAI's petition names only itself, a Florida corporation, and defendants, who are admittedly California residents. See Doc. #1; Doc. #16-2, Tripathi Dec. at ¶2. There is no dispute that the amount in controversy exceeds $75,000. However, defendants request that the Court "look through" the Petition to the underlying controversy for purposes of determining whether the Court has diversity jurisdiction. See Doc. #16-1 at 20.

The Court declines to "look through" the Petition for purposes of establishing diversity jurisdiction. "Section 4 of the [FAA] provides that a party aggrieved by the alleged failure of another to arbitrate may petition any United States district court which would have jurisdiction ... of the subject matter of a suit arising out of the controversy between the parties." Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 161 (2d Cir. 1998) (quoting 9 U.S.C. §4) (internal quotation marks omitted) (emphasis in original). "The 'parties' to which §4 of the FAA refers are the parties to the petition to compel. As with any federal action, diversity of citizenship is determined by reference to the parties named in the proceeding before the

12

district court, as well as any indispensable parties who must be joined pursuant to Rule 19 of the Federal Rules of Civil Procedure." Distajo, 66 F.3d at 445 (emphasis added). Based on this reasoning, the Second Circuit has found that a district court "was correct in looking only to the citizenship of the parties in the action before it – that is, DAI and the franchisees, who signed the arbitration agreement – to determine whether there was complete diversity." Id. at 446. If the Court were to look to the parallel state court proceeding for purposes of diversity jurisdiction, "a party resisting arbitration could defeat federal jurisdiction simply by suing someone from the same state, plus the party seeking to compel arbitration, in a separate state lawsuit." Id. Other courts have also declined to "look through" to a parallel state proceeding for purposes of ascertaining diversity jurisdiction. See, e.g., Hamilton, 150 F.3d at 161; Doctor's Assocs., Inc. v. Hollingsworth, 949 F. Supp. 77, 81-82 (D. Conn. 1996).

In requesting that the Court "look through" to the underlying state court complaint, defendants rely on the Supreme Court case of Vaden v. Discover Bank, 556 U.S. 49 (2009), which held that under section 4 of the FAA, federal courts have jurisdiction to hear a petition to compel arbitration between non-diverse parties so long as the underlying dispute between the parties "arises under" federal law. See id. at 62. Vaden

13

does not, however, explicitly extend to questions of diversity jurisdiction. See id. ("Attending to the language of the FAA and the above-described jurisdictional tenets, we approve the 'look through' approach to this extent: A federal court may 'look through' a §4 petition to determine whether it is predicated on an action that 'arises under' federal law[.]" (emphasis added)); see also UBS Sec. LLC v. Voegeli, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010), aff'd, 405 F. App'x 550 (2d Cir. 2011) ("In cases where the parties are not diverse, a federal court may 'look through' a petition under §4 of the FAA to determine whether it is predicated on an action that 'arises under' federal law." (citing Vaden, 556 U.S. at 62)). Although defendants contend that "some courts have suggested [Vaden] is applicable in diversity cases[,]" defendants cite to only one case, a non-binding and largely discredited decision from the Northern District of West Virginia. Doc. #16-1 at 20 (citing Cytec Indus., Inc. v. Powell, 630 F. Supp. 2d 680, 686 n.2 (N.D.W. Va. 2009)). There, in a footnote, the district court noted that "the reasoning in Vaden appears equally applicable to cases resting on alleged diversity jurisdiction, where no diversity exists in the underlying substantive action." Cytec Indus., 630 F. Supp. 2d at 686 n.2. The Court finds this non-binding authority unpersuasive and contrary to the controlling law in this Circuit, and other Circuits across the country. See,

14

e.g., CarMax Auto Superstores CA LLC v. Hernandez, 94 F. Supp. 3d 1078, 1094 (C.D. Cal. 2015) ("The court agrees with the Eighth Circuit's reasoned analysis, and concludes that the Supreme Court's holding in Vaden is not so expansive as to mandate that a district court adopt the 'look-through approach' to determine whether it has diversity jurisdiction to hear a §4 petition. In reaching this conclusion, the court finds particularly significant the expressly limited nature of the Vaden Court's approval of the 'look-through approach' to assess the existence of federal question jurisdiction." (citation omitted)).

In reply, defendants also claim that "[l]ast month, the Second Circuit, based on Vaden, overruled its own precedent and held the district court could 'look through' a FAA petition to determine if the underlying dispute involved questions of federal law sufficient to confer jurisdiction." Doc. #30 at 6 (citing Doscher, 832 F.3d at 381). Doscher, however, cannot be broadly read to support an argument that a federal court may also "look through" a FAA petition for purposes of ascertaining diversity jurisdiction. In Doscher, the Second Circuit "reconsider[ed] the continuing viability of our Court's precedent in Greenberg v. Bear, Stearns & Co., 220 F.3d 22 (2d Cir. 2000), in which we held that a district court may exercise federal-question jurisdiction over a §10 petition only if the

15

petition states a substantial federal question on its face —
i.e., a district court may not 'look through' the petition to
determine if the underlying dispute that was subject to
arbitration involved substantial questions of federal law." Id.
at 373. The Second Circuit ultimately concluded that "Greenberg
cannot survive Vaden's later established precedent[,]" and thus
held that "a federal district court faced with a §10 petition
may 'look through' the petition to the underlying dispute,
applying to it the ordinary rules of federal-question
jurisdiction and the principles laid out by the majority in
Vaden." Id. at 388. (emphasis added). Doscher explicitly
considers federal question jurisdiction and does not support a
finding that this court should "look through" the Petition for
purposes of ascertaining diversity jurisdiction. Therefore,
defendants' reliance on Doscher is misplaced.

Accordingly, the Court declines to "look through" the
Petition, but instead, to ascertain whether diversity of
citizenship exists, looks to the citizenship of the actual
parties to the Petition, as well as any indispensable parties
who must be joined pursuant to Rule 19 of the Federal Rules of
Civil Procedure.

### b. Joinder of the Development Agents under Rule 19

Defendants do not dispute that there is complete diversity
of jurisdiction between defendants and DAI, but alternatively

16

argue that Patel and Letap are indispensable parties under Rule 19. See Doc. #16-1 at 21. In support of this argument, defendants largely rely on non-binding Fourth Circuit law. See generally id. at 21-23. DAI generally responds that Patel and Letap are not required or indispensable parties under Rule 19. See generally Doc. #26 at 13-18.

Rule 19 governs the circumstances under which joinder of a party is required. See Fed. R. Civ. P. 19. Defendants argue that Patel and Letap are necessary parties under Rule 19(a)(2)(ii). However, defendants cite to and rely on a defunct version of Rule 19(a); there is no section (a)(2)(ii) in the current version of Rule 19, which took effect in 2007. Regardless, Rule 19(a) applies where joinder is "feasible," that is, where it would not "deprive the court of subject-matter jurisdiction[.]" Fed. R. Civ. P. 19(a)(1). Joinder here is not "feasible" because joining Patel and Letap would destroy the Court's subject-matter jurisdiction. Accordingly, the Court moves to the Rule 19(b) inquiry: whether Patel and Letap are required parties to this action.

The Second Circuit's ruling in Distajo guides this Court's analysis. "[I]ndividuals who are not parties to the arbitration agreement cannot be '[required]' parties under Rule 19(b) if they do not meet either of the threshold tests of Rule 19(a)."

17

Distajo, 66 F.3d at 446 (footnote omitted). Rule 19(a)(1)

provides:

> A person who is subject to service of process and whose
> joinder will not deprive the court of subject-matter
> jurisdiction must be joined as a party if: (A) in that
> person's absence, the court cannot accord complete
> relief among existing parties; (B) that person claims an
> interest relating to the subject of the action and is so
> situated that disposing of the action in the person's
> absence may: (i) as a practical matter impair or impede
> the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial
> risk of incurring double, multiple, or otherwise
> inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

After considering the "threshold tests" of former Rule

19(a)(1), the Distajo court rejected the argument that DAI's

development agents, there non-parties to the franchise agreement

and to the district court proceedings, were indispensable

parties to the federal action to compel arbitration. See

Distajo, 66 F. 3d at 445. The Distajo court held:

> Neither condition [of Rule 19(a)(1)] is satisfied in the
> present case. First, the district court can grant all
> the relief sought by DAI in this case — an order
> compelling arbitration — regardless of whether DAI's
> development agents (nonparties to the arbitration
> agreement) are present. Second, the other consideration
> set forth in Rule 19(a) — possible prejudice resulting
> from piecemeal litigation — is overcome in this context
> by the FAA's strong bias in favor of arbitration. Indeed,
> the Supreme Court has categorically stated that the FAA
> requires courts to enforce an arbitration agreement
> "notwithstanding the presence of other persons who are
> parties to the underlying dispute but not to the
> arbitration agreement." Moses H. Cone, 460 U.S. at 20,
> 103 S.Ct. at 939.

<u>Distajo</u>, 66 F.3d at 446.

The relief sought in DAI's petition to compel arbitration is independent of the underlying contractual dispute; that is, it involves only a decision on whether or not to compel arbitration, not the outcome of the underlying dispute. Accordingly, the line of reasoning set forth in <u>Distajo</u> holds here, because resolution of the question of whether or not arbitration can be compelled does not involve Patel or Letap, who are nonparties to the arbitration agreement at issue. Accordingly, because the Court can accord complete relief among the existing parties, <u>i.e.</u>, DAI and defendants (the only signatories to the 2012 franchise agreement containing the Arbitration Clause), Patel and Letap are not required parties to this action under Rule 19(a)(1)(A).

A similar conclusion results after considering defendants' Rule 19(a)(1)(B)(ii) argument, namely, that concurrent state and federal proceedings concerning arbitrability will create a high likelihood that one or more of the parties will face inconsistent obligations. <u>See</u> Doc. #16-1 at 21. Defendants also relatedly argue that they will be prejudiced if a judgment is rendered in Patel and Letap's absence. <u>See</u> <u>id.</u> at 22. The Court finds these arguments without merit in light of the Second Circuit's reasoning in <u>Distajo</u> that the "possible prejudice resulting from piecemeal litigation [] is overcome in this

19

context by the FAA's strong bias in favor of arbitration."

Distajo, 66 F.3d at 466.[5]

Defendants attempt to distinguish Distajo, arguing that there, DAI was not seeking to compel arbitration by the franchisees against DAI's development agents. See Doc. #30 at 4. Defendants further argue that Patel and Letap are not "strangers" to the arbitration agreement, unlike the development agents in Distajo. See id.

Defendants' efforts to distinguish Distajo are unpersuasive. Despite defendants' contrary characterizations, Distajo **did** involve claims against DAI's agents in the state court litigation. See Distajo, 66 F.3d at 444-45. Further, the defendants misconstrue Distajo. For example, defendants contend that unlike the agents in Distajo, Patel and Letap are not "strangers" to the arbitration agreement. However, under the reasoning of Distajo, Patel and Letap are in fact "strangers" to the arbitration agreement because they are not signatories to the 2012 franchise agreement containing the Arbitration Clause. See id. at 446 (categorizing "strangers" to the arbitration

---

[5] Defendants do not address Rule 19(a)(1)(B)(i). See Doc. #16-1 at 21.

agreement as those who are not parties to the arbitration agreement, like Patel and Letap, here).[6]

Defendants also attempt to argue that Patel and Letap are indispensable in light of the Second Circuit's recognition that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." Doc. #30 at 5 (quoting Fluent v. Salamanca Indian Lease Auth., 928 F.2d 542, 547 (2d Cir. 1991)) (emphasis removed). Although this argument may be persuasive in a typical contract dispute, defendants fail to appreciate the nature of the relief that is sought in the proceedings before this Court – that is, whether or not to compel arbitration. Defendants' reliance on Niagara Mohawk Power Corporation v. Tonawanda Band of Seneca Indians, 862 F. Supp. 995, 1003-03 (W.D.N.Y. 1994), is similarly misplaced as that matter did not involve a petition to compel arbitration, but rather sought a declaratory judgment as to the parties' rights and obligations under a franchise agreement. See id.

---

[6] Additionally, it is unlikely that defendants will encounter inconsistent results in light of the Court's recommendation that the District Court grant DAI's Motion for Preliminary and/or Permanent Injunction against the California state court litigation. See infra.

Finally, defendants contend that "DAI's Petition effectively seeks a declaration that the arbitration provision is applicable to Patel and Letap." Doc. #30 at 5. DAI vigorously disputes this characterization of the Petition. See Doc. #26 at 14.

One reading of DAI's Petition could suggest that it seeks to compel defendants to arbitrate against Patel and Letap, who are admittedly DAI's agents. See Doc. #1 at 3-4 ("DAI requests that this Court enter an order pursuant to 9 U.S.C. §4 directing the Tripathis to arbitrate their claims against DAI and its agents that they asserted or could have asserted in the California State Court Lawsuit pending arbitration of their dispute with DAI in the manner provided in the Agreements' arbitration clauses[.]"). However, as set forth in the Petition, such a request is plainly circumscribed by the terms of the 2012 franchise agreement:

> You may only seek damages or any remedy under law or equity for any arbitrable claim against us or our successors or assigns. You agree that our ... agents and representatives, and their affiliates, shall not be liable nor named as a party in any arbitration or litigation proceeding commenced by you where the claim arises out of or relates to this Agreement. You further agree that the foregoing parties are intended beneficiaries of the arbitration clause; and that all claims against them that arise out of or relate to this Agreement must be resolved with us through arbitration.

Doc. #1-12 at ¶10d (emphasis added); see also Doc. #1 at ¶9. Indeed, DAI contends that this language "explicitly state[s]

that the [development agents] would <u>not</u> be parties to any arbitration and that any claims based on their conduct would have to be raised in arbitration against DAI alone." Doc. #26 at 14. This requirement, according to DAI, "prevents franchisees ... from bypassing the arbitration agreement entirely by pursuing claims against DAI's agents." <u>Id.</u> DAI further states that it is "willing to stipulate that it will not argue that its agents' actions, as alleged by the Tripathis, were outside of the scope of their agency for DAI." <u>Id.</u> at n.6. Regardless of how DAI characterizes the Petition, the defendants facially agreed to arbitrate <u>any</u> claims under the FAA against DAI <u>alone</u> and pursuant to that agreement may not name DAI's agents as parties to any proceeding, arbitration or otherwise. <u>See</u> Doc. #1-12 at ¶10d. As discussed below, arbitrability has been delegated to the arbitrator, and therefore, what claims may be arbitrated against whom, or whether the arbitration clause is enforceable, are determinations for the arbitrator's consideration in the first instance.

Defendants contend in reply that the clause relied upon by DAI violates California law because it exculpates Patel and Letap from any liability. <u>See</u> Doc. #30 at 5-6. Defendants rely on California Civil Code section 1668, which provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or

willful injury to the person or property of another, or
violation of law, whether willful or negligent, are against the
policy of the law." Cal. Civ. Code §1668. Defendants recite this
statute without addressing its nuances as discussed by the
California state and federal courts. Nevertheless, because this
argument goes to the enforceability of the Arbitration Clause,
and as discussed below, the issue of arbitrability has been
delegated to the arbitrator, the Court declines to reach the
merits of this argument.

Accordingly, for the reasons stated, the Court finds that
Patel and Letap are not required parties to this action and
therefore the Court has diversity jurisdiction over the Petition
to Compel Arbitration.

3. Abstention

Defendants also argue that, even if this Court has subject
matter jurisdiction, it should abstain from exercising that
jurisdiction under the Colorado River abstention doctrine in
light of the parallel state court proceeding. See Doc. #16-1 at
23 (relying on Colorado River Water Conservation Dist. v. United
States, 424 U.S. 800 (1976)). DAI responds, inter alia, that
Colorado River abstention is limited to exceptional
circumstances, which are not present here. See Doc. #26 at 19-
20.

The Supreme Court has cautioned:

24

> Abstention from the exercise of federal jurisdiction is
> the exception, not the rule. "The doctrine of
> abstention, under which a District Court may decline to
> exercise or postpone the exercise of its jurisdiction,
> is an extraordinary and narrow exception to the duty of
> a District Court to adjudicate a controversy properly
> before it. Abdication of the obligation to decide cases
> can be justified under this doctrine only in the
> exceptional circumstances where the order to the parties
> to repair to the state court would clearly serve an
> important countervailing interest." County of Allegheny
> v. Frank Mashuda Co., 360 U.S. 185, 188-189 (1959).

Colorado River, 424 U.S. at 813. When considering a question of

Colorado River abstention, the Court must first determine

whether the state and federal proceedings are parallel. See

Dittmer v. County of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998);

Smulley v. Mutual Omaha Bank, 634 F. App'x 335, 336 (2d Cir.

2016). Next, the Court evaluates and balances the following

factors: "(1) assumption of jurisdiction over a res; (2)

inconvenience of the forum; (3) avoidance of piecemeal

litigation; (4) order in which the actions were filed; (5) the

law that provides the rule of decision; and (6) protection of

the federal plaintiff's rights." Williams v. Lambert, 46 F.3d

1275, 1283 (2d Cir. 1995) (quoting De Cisneros v. Younger, 871

F.2d 305, 307 (2d Cir. 1989)); see also Smulley, 634 F. App'x at

336 (same). "[T]he decision whether to dismiss a federal action

because of parallel state-court litigation does not rest on a

mechanical checklist, but on a careful balancing of the

important factors as they apply in a given case, with the

25

balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983). Assuming, without deciding, that the current matter and the state court proceedings are parallel, balancing the above factors does not weigh in favor of abstention.

Defendants first contend that because the California court has jurisdiction over the defendants' franchises and leaseholds, and the personal property, fixtures and equipment of each franchise, this factor weighs in favor of abstention. See Doc. #16-1 at 24-25. Although the Court does not disagree with this characterization of the physical location of the property, neither this action nor the California action involves jurisdiction over property. The current matter simply asks this Court to compel arbitration. The California action sounds in breach of contract and tort. "The Second Circuit has noted that the absence of jurisdiction by either the state or federal court over property 'point[s] toward [the] exercise of jurisdiction.'" Goldentree Asset Mgmt., L.P. v. Longaberger Co., 448 F. Supp. 2d 589, 593 (S.D.N.Y. 2006) (quoting De Cisneros, 871 F.3d at 307). Accordingly, "for purposes of the Colorado River analysis, the first factor weighs slightly against abstention." Id. (finding that where neither the federal action nor the state court action involved jurisdiction over property, for purposes of Colorado

26

<u>River</u> abstention, this first factor weighed "slightly against abstention"); <u>see also</u> <u>Vill. of Westfield v. Welch's</u>, 170 F.3d 116, 122 (2d Cir. 1999) ("This action was not an in rem action and did not involve jurisdiction over property. We have held that the absence of a res points toward exercise of federal jurisdiction. This factor thus weighs against the stay." (internal quotation marks and citation omitted)).

Defendants contend that the second factor, inconvenience of the federal forum, also weighs in favor of abstention. <u>See</u> Doc. #16-1 at 25. In support of this argument, defendants represent that the California court is closer to the evidence, franchises and witnesses. <u>See</u> <u>id.</u> Although the majority of the evidence and witnesses may be located in California, DAI's headquarters, executives, general counsel, and presumably the documents that would be at issue in the California state court proceedings, are located in Connecticut. <u>See generally</u> Doc. #26-1, Piselli Dec.; Doc. #1-12 at ¶11e (requiring legal notices be sent to the legal department in Milford, Connecticut). Accordingly, this factor does not justify the Court abstaining in this matter. <u>See</u> <u>Welch's</u>, 170 F.3d at 122 ("We have held that where the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court." (citation omitted)).

With respect to the third factor, the potential for piecemeal litigation, defendants contend that this factor "strongly favors abstention." Doc. #16-1 at 25. Specifically, defendants assert that because "the two actions ask the respective courts to decide the enforceability of DAI's arbitration scheme, both courts would be considering the same issues and could possibly come to conflicting decisions." Id. The Court disagrees. "First, the Supreme Court has held that 'mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.'" Welch's, 170 F.3d at 123 (quoting Colorado River, 424 U.S. at 816). Also, the Supreme Court has noted that the concern over piecemeal litigation is trumped in the arbitration context because "the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." Moses Cone, 460 U.S. at 20. Finally, the risk of piecemeal litigation is further reduced in light of DAI's filing of a motion for temporary or permanent injunction, which if granted pursuant to this Court's recommendation, will prevent the issuance of conflicting decisions.

The fourth factor, the order in which the cases were filed, also weighs against abstention. "This factor does not turn exclusively on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two

actions. In addition, where there has been limited progress in a state court suit, the fact that the state action was commenced before the federal suit carries little weight." Welch's, 170 F.3d at 122 (internal quotation marks and citations omitted). Defendants admit that "only negligible progress" has occurred in the California court. Doc. #16-1 at 25. Accordingly, this factor also weighs against abstention. See Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 138 (2d Cir. 1997) (finding district court did not abuse its discretion in refusing to abstain where a default judgment entered in the parallel state court proceeding was not sufficiently "substantial" to warrant abstention under Moses Cone).

Defendants next contend that the fifth factor, the law that provides the rule of decision, also favors abstention because California law governs whether the arbitration agreement is unconscionable or against public policy. See Doc. #16-1 at 25. Assuming, without here deciding, that California law would apply to a determination of whether the Arbitration Clause is enforceable, there is nothing to suggest that a federal court, sitting in diversity, would be unable to apply California law, or that the issues raised by defendants present new or novel issues of California law. Accordingly, the Court finds this to be a neutral factor. See Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 522 (2d Cir. 2001) ("[T]he

29

facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it.").

Defendants last contend that the California action is adequate to protect DAI's interests. See Doc. #16-1 at 25. However, the Court is bound to disagree with this characterization as the relief sought by DAI in the current action, i.e., to compel arbitration, can only be granted by a Court sitting in this District. See 9 U.S.C. §4. The California court cannot order arbitration. Accordingly, the California action would not be adequate to protect DAI's interests. Therefore, this factor also weighs slightly against abstention.

"In this analysis [under Moses Cone], the balance is heavily weighted in favor of the exercise of jurisdiction." Woodford, 239 F.3d at 522 (citation and internal quotation marks omitted). Accordingly, based on the Court's consideration of the above factors, and the precedent holding that abstention generally is not appropriate in the context of petitions to compel arbitration brought pursuant to the FAA, the Court declines to dismiss or stay this matter on Colorado River abstention grounds. See, e.g., Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299 (3d Cir. 2009); Answers in Genesis of Ky, Inc. v. Creation Ministries Int'l Ltd., 556 F.3d 459 (6th Cir. 2009); First Franklin Fin. Corp. v. McCollum, 144 F.3d 1362 (11th Cir. 1998).

30

4. Request to Transfer to the Northern District of California

Defendants summarily contend that this Court should transfer the present action to the Northern District of California under the first-filed rule. See Doc. #16-1 at 26. Defendants rely on an unreported case from the Southern District of Florida for the proposition that this Court should transfer the Petition to Compel Arbitration to the Northern District of California "notwithstanding the fact that a motion to compel arbitration is generally filed in the district where arbitration is sought." Doc. #16-1 at 26 (citing Colorall Techs. Int'l, Inc. v. Plait, No. 05CV60401(COHN), 2005 WL 4655380 (S.D. Fla. July 15, 2005)).

### a. First-Filed Rule

Defendants' reliance on the first-filed rule is misplaced. "The 'first filed' rule states that where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action, unless there are special circumstances which justify giving priority to the second action." City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991) (citations omitted) (emphasis added). Here, there is no "first-filed" federal action which would implicate the first-filed rule, as defendants' complaint, admittedly the first to be filed in this dispute, is pending in

31

state, not federal court. Additionally, defendants conveniently ignore the well-established precedent holding that the first-filed rule does not apply to cases of parallel state and federal proceedings. See Colorado River, 424 U.S. at 817 ("Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" (citation and internal quotation marks omitted)); Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C., 259 F. Supp. 2d 172, 177-78 (D. Conn. 2003) ("[T]he defendants argue that this action should be dismissed due to the presence of a prior pending action in the New York Supreme Court. The defendants' argument ignores the well-established federal rule that the 'pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" (quoting Colorado River, 424 U.S. at 817)); see also Kytel Int'l Grp., Inc. v. Rent A Ctr., Inc., 43 F. App'x 420, 422 (2d Cir. 2002) (district court erred dismissing action based on first-filed rule where the first-filed action was pending in state, not federal court). "Although the Supreme Court recognizes that 'exceptional' circumstances may permit the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration, those circumstances are not present in this

case." Nat'l Council on Comp. Ins., 259 F. Supp. 2d at 178.
Further, as previously discussed, the Court does not find it
should abstain from exercising its jurisdiction under Colorado
River.

Defendants' reliance on Colorall in support of their first-
filed argument is also misplaced, and not "directly on point" as
contended. See Doc. #16-1 at 26. In Colorall, there was a first-
filed federal action pending. See Colorall, 2005 WL 4655380, at
*2. Here, that is admittedly not the case. Additionally,
defendants explicitly request that the Court transfer the
Petition. See Doc. #30 at 8. However, the Colorall court did not
transfer the petition to compel arbitration, but rather stayed
the determination of the petition, and transferred the matter to
the California federal court solely for a determination of
whether respondents were fraudulently induced into entering into
the arbitration agreement. See Colorall, 2005 WL 4655380, at *5-
6. Accordingly, Colorall is not helpful to the Court's analysis
in determining whether this matter should be transferred to the
Northern District of California.

DAI has complied with the mandates of the FAA by filing the
Petition to Compel Arbitration in the District of Connecticut.
See 9 U.S.C. §4 ("[T]he hearings and proceedings, under [an
arbitration] agreement shall be within the district in which the
petition for an order directing such arbitration is filed.");

see also Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction." (citation omitted)); Vertucci v. Orvis, No. 3:05CV1307(PCD), 2006 WL 1688078, at *4 (D. Conn. May 30, 2006) ("This Court, however, lacks the authority to compel the parties to proceed to arbitration in accordance with the terms of the arbitration agreement because that agreement provides for arbitration in Utah. This Court's authority to compel arbitration under Section 4 of the FAA is restricted to arbitration proceedings that occur within this District." (citing 9 U.S.C. §4)). Defendants concede as much in their motion to dismiss. See Doc. #16-1 at 26.

### b. Forum Selection Clause

Finally, in opposing defendants' motion to transfer, DAI contends that because the defendants "freely and voluntarily entered into their Franchise Agreements, and they were aware that those contracts unambiguously required arbitration in Connecticut ... [t]he parties' forum selection is therefore presumptively enforceable." Doc. #26 at 22 (citing cases). In reply, defendants contend that "DAI is wrong that the franchise agreement 'unambiguously required arbitration in Connecticut[,]'" in light of a 2012 franchise disclosure document which "advised [defendants] that arbitration was

subject to state law and expressly called out California franchise law." Doc. #30 at 8. Defendants claim to have believed that pursuant to California state law, any arbitration would take place in California. This argument, however, is poorly developed and has no basis in fact or law. As an initial matter, the section of the California Franchise Relations Act which voids "a provision in a franchise agreement restricting venue to a forum outside" of California has been held to be pre-empted by the Federal Arbitration Act. See Bradley v. Harris Research, Inc., 275 F.3d 884, 890 (9th Cir. 2001). Additionally, the 2012 franchise disclosure document upon which defendants rely stated in numerous places that defendants would be required to arbitrate in Connecticut. See Doc. #26-5 at 37[7] ("THE FRANCHISE AGREEMENT REQUIRES YOU TO RESOLVE DISPUTES WITH US BY ARBITRATION IN CONNECTICUT" (emphasis in original)); id. at 39 ("**YOU SHOULD READ PARAGRAPH 10 OF THE FRANCHISE AGREEMENT CAREFULLY.**" (emphasis in original)); id. at 40 ("Arbitration and any litigation must be held in Connecticut, subject to state law."). Accordingly, the Court does not find that the 2012 franchise disclosure document supports an argument in favor of transferring this matter to the Northern District of California.

---

[7] The page numbers referenced in this document are those that correlate to the PDF pages in light of the illegibility of the ECF heading.

Thus, for the reasons stated, the Court recommends that defendants' Motion to Dismiss, Abstain, and/or Transfer Action to California [**Doc. #16**] be **DENIED**.

**B. Petition to Compel Arbitration [Doc. #1]**

Having found that the Court has subject-matter jurisdiction to consider DAI's Petition to Compel Arbitration, the Court now turns to the parties' arguments directed to whether this Court should compel defendants to arbitrate their claims arising out of the franchise agreements.[8]

1. <u>Legal Standards</u>

DAI seeks to compel arbitration pursuant to Section 4 of the FAA. <u>See</u> Doc. #1 at 1. The FAA "creates a body of federal substantive law of arbitrability applicable to arbitration agreements ... affecting interstate commerce." <u>All. Bernstein Inv. Research & Mgmt., Inc. v. Schaffran</u>, 445 F.3d 121, 125 (2d Cir. 2006) (quoting <u>Moses Cone</u>, 460 U.S. at 24) (internal

---

[8] On November 2, 2016, defendants filed a Notice of Supplemental Authority in further support of their opposition to the Petition and the Motion to Dismiss. [Doc. #43]. In large part, the notice cites to legal authority that is not binding on this court. The one Connecticut Supreme Court case cited was decided on August 16, 2016, well before defendants filed their motion for leave to file sur-reply in opposition to petition to compel arbitration on September 1, 2016. [Doc. #31]. Additionally, the supplemental authority provided, like much of the other law relied on by defendants, is not helpful to the Court's analysis as it does not involve or otherwise relate to the specific issue now under consideration, that is, whether or not to compel arbitration.

quotation marks omitted). The parties do not dispute that the franchise agreements at issue affect interstate commerce or that the FAA applies to the arbitration agreement here at issue.

"Any analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements." Hamilton, 150 F.3d at 162 (citing Perry v. Thomas, 482 U.S. 483, 490 (1987)); see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) (recognizing a "strong and liberal federal policy favoring arbitration agreements" (citation and internal quotations omitted)); Considine v. Brookdale Senior Living, Inc., 124 F. Supp. 3d 83, 88 (D. Conn. 2015) ("The FAA 'establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution.'" (quoting Preston v. Ferrer, 552 U.S. 346, 349 (2008))). The Court must also consider the following factors in determining whether all or part of an action should be sent to arbitration:

> [F]irst, it must determine whether the parties agreed to
> arbitrate; second, it must determine the scope of that
> agreement; third, if federal statutory claims are
> asserted, it must consider whether Congress intended
> those claims to be nonarbitrable; and fourth, if the
> court concludes that some, but not all, of the claims in
> the case are arbitrable, it must then decide whether to
> stay the balance of the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir.

2004) (quoting Oldroyd v. Elmira Sav. Bank, 134 F.3d 72, 75-76

(2d Cir. 1998)); see also Ferrie v. DirecTV, No. 15CV409(JCH),

2016 WL 183474, at *3 (D. Conn. Jan. 12, 2016) (same).

Section 2 of the FAA is "the primary substantive provision

of the Act," Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67

(2010) (citing Moses Cone, 460 U.S. at 24), and provides:

> A written provision in ... a contract evidencing a
> transaction involving commerce to settle by arbitration
> a controversy thereafter arising out of such contract
> ... shall be valid, irrevocable, and enforceable, save
> upon such grounds as exist at law or in equity for the
> revocation of any contract

9 U.S.C. §2. Section 4 of the FAA prescribes the procedures

courts follow when considering motions to compel arbitration,

and states, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or
> refusal of another to arbitrate under a written
> agreement for arbitration may petition ... for an order
> directing that such arbitration proceed in the manner
> provided for in such agreement. ... The court shall hear
> the parties, and upon being satisfied that the making of
> the agreement for arbitration or the failure to comply
> therewith is not in issue, the court shall make an order
> directing the parties to proceed to arbitration in
> accordance with the terms of the agreement. ... If the
> making of the arbitration agreement or the failure,
> neglect, or refusal to perform the same be in issue, the
> court shall proceed summarily to the trial thereof.

9 U.S.C. §4. In considering a petition to compel arbitration,

the Court "applies a standard similar to that applicable for a

motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d

171, 175 (2d Cir. 2003) (collecting cases); see also D'Antuono v. Serv. Road Corp, 789 F. Supp. 2d 308, 319 (D. Conn. 2011) (same). Therefore, "where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law," the Court may grant or deny the petition without a trial. Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 172 (2d Cir. 2011); see also D'Antuono, 789 F. Supp. 2d at 319–20 (illuminating the summary judgment standard in the context of a petition to compel arbitration).

   2. Choice of Law

    "While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 364 (2d Cir. 2003) (citation and internal quotation marks omitted) (emphasis in original). "Accordingly, while the FAA creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act, in evaluating whether the parties have entered into a valid arbitration agreement, the court must look to state law principles." Id. (internal citation and quotation marks omitted). Here, defendants argue that California law applies to the instant dispute. DAI, by contrast,

39

contends that the Connecticut choice of law provision set forth in the 2012 franchise agreement is enforceable, and therefore, Connecticut law applies.

"As a federal court sitting in diversity jurisdiction, the District Court is obligated to apply the law of the forum state in analyzing preliminary choice-of-law questions." Id. (citation and internal quotation marks omitted). "The threshold choice of law issue in Connecticut, as it is elsewhere, is whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case. If not, there is no need to perform a choice of law analysis, and the law common to the jurisdiction should be applied." Cohen v. Roll-A-Cover, LLC, 27 A.3d 1, 16 (Conn. 2011) (citation omitted). Here, there appears to be a conflict between California and Connecticut law with respect to the unconscionability analysis of an arbitration agreement. DAI does not argue otherwise. Accordingly, a choice of law analysis is necessary notwithstanding whether or not there was a meeting of the minds with respect to the choice of law provision set forth in the 2012 franchise agreement.[9]

---

[9] Defendants contend that there was no meeting of the minds with respect to the choice of law and forum selection clause set forth in the 2012 franchise agreement. See Doc. #17 at 27-29. The Court need not reach this issue in light of its finding infra that even in the absence of an effective choice of law clause, Connecticut law applies to the discussion below.

In challenging the 2012 franchise agreement's choice of law provision, defendants rely primarily on the Connecticut Supreme Court case of Elgar v. Elgar, 679 A.2d 937 (Conn. 1996). See Doc. #17 at 24. In response, DAI does not undertake a choice of law analysis, instead arguing, inter alia, that "Connecticut law enforces parties' contractual choice of law if that choice was made in good faith." Doc. #26 at 30 (collecting cases).

In Elgar, the Connecticut Supreme Court concluded,

in accordance with §187 of the Restatement, that parties to a contract generally are allowed to select the law that will govern their contract, unless either: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of §188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

Elgar, 679 A.2d at 943 (footnote omitted). Defendants focus on subsection (b) in support of their position that California law

---

Additionally, to the extent defendants contend that there was no meeting of the minds with respect to this provision, the Court rejected a similar, if not identical argument raised by counsel for defendants in Doctor's Associates, Inc. v. Pahwa, et. al., in connection with a Motion to Dismiss that requested the Court transfer a Petition to Compel Arbitration to the Northern District of California. See Pahwa, No. 16CV00446(JCH), slip op. at 30 (D. Conn. Nov. 3, 2016) (Recommended Ruling re: Plaintiff's Petition to Compel Arbitration, Defendants' Motion to Dismiss, and Plaintiff's Motion for Preliminary and/or Permanent Injunction).

should apply to the current dispute. For the reasons set forth below, the Court disagrees.

Addressing subsection (b), upon which defendants rely, the Elgar court stated: "[T]he application of the law of the chosen state must not violate a fundamental policy of the state that (1) has a greater material interest in the determination of the issue, and (2) is the state whose law would be applied in the absence of a choice by the parties." Elgar, 679 A.2d at 944 (emphasis added). Therefore, the Court "need consider the relative policy interests only if [California] has a materially greater interest than [Connecticut] in deciding the validity of the [arbitration] agreement." Id.

Defendants argue that California law would apply in the absence of a choice of law clause – essentially contending that California has a materially greater interest than Connecticut in deciding the validity of the arbitration agreement. See Doc. #17 at 30-31. Specifically, applying the factors of Section 188 of the Restatement (Second) Conflict of Laws, defendants contend that California law should apply because: defendants signed the contract in California; the franchise agreement is one of adhesion, which was tendered to defendants in California; and the place and the performance of the franchise agreement was in California. See id. at 31. Defendants' argument, however, fails to consider the interest that Connecticut has in the present

42

dispute, which is not the enforceability of the franchise agreement as a whole, but rather, the enforceability of the arbitration agreement.

Defendants erroneously suggest, without evidentiary support, that the franchise agreement was counter-signed in Florida. See id. All of the franchise agreements attached to the Petition to Compel were, however, "signed by authorized agents in Connecticut." Doc. #26-1, Piselli Dec. at ¶6. Defendants further erroneously focus on where the franchise agreement as a whole was to be performed; the Elgar court actually states that the "contacts are to be evaluated according to their relative importance with respect to the particular issue." Elgar, 679 A.2d at 941 n.8 (quoting Section 188 of the Restatement (Second) of Conflict of Laws) (emphasis added). Here, the particular issue under consideration is the enforcement of the arbitration agreement, and the parties facially agreed that arbitration was to be held in Bridgeport, Connecticut. See Doc. #1-12 at ¶10b. Additionally, any legal notice to be given to DAI under the 2012 franchise agreement was to be provided to the Legal Department in Milford, Connecticut. See Doc. #1-12 at ¶11e. Such provisions were set forth not only in the 2012 franchise agreement, but in several prior agreements entered into between DAI and defendants. See, e.g., Doc. #1-3 at ¶¶10a, 11e; Doc. #1-4 at ¶¶10a, 11e; Doc. #1-5 at ¶¶10a, 11e; Doc. #1-6 at ¶¶10a, 11e.

43

Moreover, given that DAI's headquarters and legal department are located in Connecticut, see id.; Doc. #26-1, Piselli Dec. at ¶5, presumably at least some of defendants' contractual obligations were directed by DAI's personnel in Connecticut. Based on the foregoing, although there are significant contacts with California, they are not materially greater than the contacts with Connecticut, especially in light of the particular issue now under consideration.

A Connecticut Superior Court addressing this issue recently came to the same conclusion. There, DAI filed an action to confirm a favorable arbitration award obtained against the defendant franchisees. See Doctor's Assocs., Inc. v. Searl, No. CV146016689S, 2015 WL 5975855, at *1 (Conn. Super. Ct. Sept. 15, 2015). In opposing the confirmation of the award, the Searl defendants contended that "they had meritorious defenses to the plaintiff's demand for arbitration but they were not given notice or an opportunity to be heard." Id. (internal quotation marks omitted). The Searl defendants further argued that the Court should apply New York law to the dispute, even though the contract provided for application of Connecticut law. See id.

The relevant portion of the franchise agreement in Searl is nearly identical to the agreement terms at issue here. There, the franchise agreement contained an arbitration agreement that provided for all disputes to be resolved by arbitration held in

44

Bridgeport, Connecticut. See id. at *4. Similar to the defendants here, the Searl defendants argued that under Elgar and the Restatement, New York law applied because New York "had a materially greater interest than Connecticut in the determination of the issues in the dispute and ... the application of Connecticut law would be contrary to the fundamental policy of New York." Searl, 2015 WL 5975855, at *5. In support of this argument,

> the defendants note[d] that the Franchise Agreement relates to a New York store; the employees, customers and equipment were located in New York; the defendants "reviewed and signed all of the operative documents in New York"; "the plaintiff's interaction with the defendants was almost entirely through its Development Agent ... with offices in New York"; and "the only connection to Connecticut is that it is the location of the plaintiff's corporate offices and legal department."

Id. This, however, was not enough for the Superior Court to find that New York had a materially greater interest in the dispute than Connecticut:

> Although there were significant contacts with New York, they are not materially greater than the contacts with Connecticut. The facts that the Subway store at issue and its franchisees are located in New York, as is the store's operations, are not materially greater than the facts that Subway's headquarters are located in Connecticut; the defendants were in contact with the plaintiff's legal department in Connecticut concerning store operations; any notice under the Franchise Agreement were required to be addressed to the plaintiff's legal department in Connecticut; the parties agreed that Bridgeport, Connecticut was the site for the arbitration hearing; and that the agreement is to be "governed by and construed in accordance with the substantive laws of the State of Connecticut."

45

Id. at *6. This conclusion further bolsters the Court's finding that under the circumstances here, the contacts with California are not materially greater than the contacts with Connecticut.[10]

Based on this finding, "the Court need not consider the relative policy interests, which would only be necessary had the court found [California] to have a materially greater interest in the proceedings than Connecticut." Id. (citing Elgar, 679 A.2d at 944). Accordingly, the Court will apply Connecticut law to the present dispute.

### 3. Unconscionability

Defendants, relying primarily on California law, next argue that the arbitration agreement is both procedurally and substantively unconscionable. See Doc. #17 at 39-49.[11]  DAI responds that unconscionability challenges are for the arbitrator to determine, where, as here, the parties incorporated rules empowering an arbitrator to determine the enforceability of the arbitration agreement specifically. See

---

[10] If the Court were tasked at this stage with enforcement of the franchise agreement as a whole, a different finding might result. However, that is not the question before the Court. Instead, the Court here determines only whether or not it should compel arbitration.

[11] Defendants do not deny that they entered into the 2012 franchise agreement, which contains the Arbitration Clause at issue. Indeed, defendants' "first argument assumes that an agreement to arbitrate exists, and that it is voidable as unconscionable." Pingel v. Gen. Elec. Co., No. 3:14CV00632(CSH), 2014 WL 7334588, at *3 (D. Conn. Dec. 19, 2014).

Doc. #26 at 24-27. In reply, defendants contend that the Court should consider the unconscionability challenge because: (1) the franchise agreement does not clearly and unmistakably delegate arbitrability to the arbitrator; and (2) the delegation clause, even if clear and unmistakable, is also unconscionable. See Doc. #31 at 5-9. Accordingly, before reaching the issue of whether the arbitration agreement is unconscionable, the Court turns first to an examination of the delegation clause.

### a. The Language of the Delegation Clause

Generally, there is a presumption that courts, not arbitrators, will decide issues of arbitrability.[12] See Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995)). This presumption, however, may be rebutted with "clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Id. (citation and internal quotation

---

[12] "'Questions of arbitrability' is a term of art covering disputes about [1] whether the parties are bound by a given arbitration clause as well as disagreements about [2] whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Gerena v. Neurological Surgery, P.C., No. 15CV4634(JMA)(GRB), 2016 WL 3647782, at *2 n.1 (E.D.N.Y. June 9, 2016) (citation omitted), report and recommendation adopted, No. 15CV4634(JMA)(GRB), 2016 WL 3647866 (July 1, 2016).

marks omitted) (emphasis in original). "The Supreme Court has indeed recognized that, through a 'delegation provision,' 'parties can agree to arbitrate "gateway" questions of arbitrability,' including whether the arbitration agreement is unconscionable. The agreement must, however, demonstrate 'clearly and unmistakably' that 'the parties agreed to arbitrate arbitrability.'" Crewe v. Rich Dad Educ., LLC, 884 F. Supp. 2d 60, 84 (S.D.N.Y. 2012) (quoting Rent-A-Center, W., 561 U.S. at 68-69); see also Considine, 124 F. Supp. 3d at 89 ("The Supreme Court has indicated that the question of who — the arbitrator or the Court — has the power to decide the threshold issue of arbitrability depends on what the parties have agreed about that particular matter. Issues of arbitrability include gateway questions, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." (citations and internal quotation marks omitted)).

Although this claim was not raised in their initial opposition to the Petition to Compel Arbitration, defendants in reply contend that "the franchise agreement does not clearly and unmistakably delegate the arbitrability issue to the arbitrator." Doc. #31 at 6. Defendants specifically argue that other provisions of the franchise agreement are inconsistent with a clear and unmistakable delegation of gateway issues to the arbitrator. See id. (citing paragraphs 11c and 18 of 2012

48

franchise agreement). Defendants' arguments, which primarily rely on California law, are unpersuasive in light of the precedent in this Circuit and the state of Connecticut.

"Clear and unmistakable evidence exists when an arbitration clause explicitly delegates arbitrability determinations to the arbitrator, or when it incorporates by reference arbitration rules that do so." Arshad v. Transp. Sys., Inc., No. 15CV2138(NRB), 2016 WL 1651845, at *3 (S.D.N.Y. Apr. 25, 2016) (citing Contec, 398 F.3d at 208). The Second Circuit has specifically held that "when ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec, 398 F.3d at 208; see also Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 124–25 (2d Cir. 2003) ("In sum, because the parties' arbitration agreement is broadly worded to require the submission of 'all disputes' concerning the Representation Agreement to arbitration, and because it provides for arbitration to be conducted under the rules of the ICC, which assign the arbitrator initial responsibility to determine issues of arbitrability, we conclude that the agreement clearly and unmistakably evidences the

parties' intent to arbitrate questions of arbitrability.").[13]
District Courts within this Circuit have routinely applied
Contec's holding to find the delegation of arbitrability clear
and unmistakable where the AAA rules are incorporated by
reference into the arbitration clause. See, e.g., Considine, 124
F. Supp. 3d at 90-91; Arshad, 2016 WL 1651845, at *4; Cong.
Const. Co. v. Geer Woods, Inc., No. 3:05CV1665(MRK), 2005 WL
3657933, at *2-3 (D. Conn. Dec. 29, 2005); Discover Prop. & Cas.
Ins. Co. v. Tetco, Inc., No. 3:12CV473(JBA), 2014 WL 685367, at
*8 (D. Conn. Feb. 19, 2014).

The applicable language of the arbitration clause at issue
here provides:

> Any dispute, controversy or claim arising out of or
> relating to this Agreement or the breach thereof shall
> be settled by arbitration. The arbitration shall be
> administered by the American Arbitration Association or
> its successor ("AAA") in accordance with its
> administrative rules including, as applicable, the
> Commercial Rules of the AAA and under the Expedited
> Procedures of such rules or under the Optional Rules of
> Emergency Measures of Protection of the AAA.

---

[13] Defendants argue that Contec's holding has been limited by
other courts around the country to arbitration agreements
between sophisticated commercial parties. See Doc. #31 at 7.
However, defendants fail to cite to any cases within this
Circuit to support that contention. Additionally, to the extent
that defendants contend that they are not sophisticated
commercial parties, the Court disagrees. Defendants are not
unsophisticated consumers, but rather seasoned business people
who have run more than 30 Subway franchises over the past
fifteen years. See Doc. #17-1, Tripathi Dec. at ¶2. At the time
Mr. Tripathi filed his declaration, these franchises "employ[ed]
some 80 people." Id.

> Any disputes concerning the enforceability or scope of
> the arbitration clause shall be resolved pursuant to the
> [FAA] and the parties agree that the FAA preempts any
> state law restrictions (including the site of the
> arbitration) on the enforcement of the arbitration
> clause in this Agreement.

Doc. #1-12 at ¶¶10a, 10f. Rule 7 of the AAA Commercial Rules
provides that "[t]he arbitrator shall have the power to rule on
his or her own jurisdiction, including any objections with
respect to the existence, scope, or validity of the arbitration
agreement or to the arbitrability of any claim or counterclaim."
AAA Rule R-7(a). In light of this language, and the applicable
Second Circuit precedent, the Court finds clear and unmistakable
evidence that the 2012 franchise agreement's Arbitration Clause
delegates the question of arbitrability to the arbitrator. See
Contec, 398 F.3d at 208; Considine, 124 F. Supp. 3d at 90-91
("[E]ven if the plain language of the contract were not
dispositive on this point, the parties also incorporate a set of
rules into their agreement, which delegate the authority to
decide arbitrability to the arbitrator. ... The incorporated
rules provide that '[t]he arbitrator shall have the power to
rule on his or her own jurisdiction, including any objections
with respect to the existence, scope or validity of the
arbitration agreement.' Ex. B, AAA Employment Arbitration Rules
& Mediation Procedures at 17. The Second Circuit has found that
incorporation into an arbitration agreement of procedural rules

that use this same language was sufficiently 'unmistakable and clear' evidence of an intent to arbitrate arbitrability." (citation omitted)); Arshad, 2016 WL 1651845, at *4 ("We find clear and unmistakable evidence that the Subscription Agreement's arbitration provision delegates the question of arbitrability to the arbitrator. Specifically, it requires the arbitration to be 'administered by the American Arbitration Association under its Commercial Arbitration Rules.'"); Cong. Const. Co., 2005 WL 3657933, at *2 ("The Second Circuit has repeatedly held that when, as here, parties incorporate by reference arbitral rules that ... permit the arbitrator to rule on its own jurisdiction, the arbitrator must decide issues of arbitrability."); Discover Prop., 2014 WL 685367, at *8 ("[T]he Court concludes in the context of this commercial arbitration agreement between sophisticated parties that the incorporation by reference of the AAA rules evinces a clear and unmistakable intent to reserve challenges to the validity of the arbitration agreement to the arbitrator in the first instance, and the Court will not address the merits of Discover's argument that the arbitration clause is invalid for lack of consideration.").

Lending further support to this finding is the broad scope of the arbitration clause, which provides for arbitration of "[a]ny dispute, controversy or claim arising out of or relating to this Agreement or the breach thereof[.]" Doc. #1-12 at ¶10a.

52

The Second Circuit has found that a similar clause "is the paradigm of a broad clause[,]" which supports a "presumption that the claims are arbitrable." Collins & Aikman Prod. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 20 (2d Cir. 1995) (citations omitted); Mehler v. Terminix Int'l Co. L.P., 205 F.3d 44, 49 (2d Cir. 2000) ("There is no dispute that the arbitration clause at issue is a classically broad one. The clause provides for arbitration of 'any controversy or claim between the parties arising out of or relating to' the Agreement. We have previously decided that this is 'precisely the kind of broad arbitration clause that justifies a presumption of arbitrability.'" (internal citation omitted)). Courts within this Circuit have further found that such broad language clearly evidences the parties' intent to arbitrate issues of arbitrability. See, e.g., Arshad, 2016 WL 1651845, at *4; PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc., No. 14CV764(RJS), 2015 WL 1442487, at *4 (S.D.N.Y. Mar. 27, 2015) (Arbitration clause's "broad language" and incorporation by reference of the AAA's Commercial Arbitration rules made it "both clear and unmistakable that the parties intended to arbitrate the question of arbitrability."); Bell v. Cendant Corp., 293 F.3d 563, 568 (2d Cir. 2002) ("Under Connecticut law, an intent to refer the matter to the arbitrator may be indicated 'by an express provision or through the use of broad terms to describe the scope of arbitration, such as "all

questions in dispute and all claims arising out of" the contract or "any dispute that cannot be adjudicated."'" (quoting City of Bridgeport v. Bridgeport Police Local 1159, AFSCME, Council 15, 438 A.2d 1171, 1173 (Conn. 1981))); see also Distajo, 66 F.3d at 453 (noting "Connecticut's strong policies favoring arbitration" (collecting cases)).

Defendants further contend that the delegation clause conflicts with other sections of the 2012 franchise agreement, and, therefore, the agreement does not clearly and unmistakably delegate arbitrability to the arbitrator. See Doc. #31 at 6-7 (relying on paragraphs 11c (severability clause) and 18 (waiver of jury) of 2012 franchise agreement). Defendants' arguments are not compelling. Defendants fail to cite to any binding case law in support of their arguments. The Court's research has further failed to reveal any case law within this Circuit that would support defendants' arguments. Additionally, such conflict is artificial, where it is plausible that situations could arise in which a Court could review the arbitral panel's determination on enforceability when, for example, deciding a post-award motion to vacate. See Mohamed v. Uber Techs., Inc., No. 15-16178, -- F.3d --, 2016 WL 4651409 (9th Cir. Sept. 7, 2016). Accordingly, and in light of the Second Circuit precedent cited above, the Court finds that the 2012 franchise agreement's Arbitration

Clause clearly and unmistakably delegates issues of arbitrability to the arbitrator.

### b. Unconscionability of the Delegation Clause

Defendants alternatively argue that the delegation clause itself is unconscionable. See Doc. #31 at 8-9. Because this argument was first raised in a sur-reply, DAI has not been afforded an opportunity to respond to this specific contention.[14]

The question of unconscionability is governed by state law. See Cap Gemini, 346 F.3d at 365 (collecting cases). Although defendants challenged the consionability of the arbitration clause generally in their opposition to the Petition to Compel Arbitration, for the first time in reply, defendants challenge the consionability of the delegation provision specifically. See Doc. #31 at 8-9. Defendants make a single unconscionability argument directed to the delegation clause, namely, that in

---

[14] On November 2, 2016, defendants filed a Motion for Judicial Notice and to Establish Evidentiary Admission of Procedural Unconscionability. [Doc. #44]. DAI has filed a response in opposition. [Doc. #45]. Without deciding the merits of the motion, this filing does not change the Court's analysis as the "minimal procedural unconscionabililty" alleged goes to the arbitration agreement as a whole, and not the delegation provision specifically. See Pingel, 2014 WL 7334588, at *6. Additionally, the document upon which defendants rely was filed on October 21, 2016, approximately ten days before defendants raised this issue with this Court, even though counsel were aware that the Court intended to rule on these motions on an expedited basis. See Doc. #44-1 at 43. Further, defendants could have noted this in their opposition to the motion for injunction filed on October 24, 2016, [Doc. #40], but notably, failed to do so.

light of the Connecticut choice of law provision, which "would restrict the [defendants] from using California unconscionability arguments[,]" the choice of law clause fails, and with it, the delegation clause. Doc. #31 at 8-9. In support of this argument, defendants rely on a single California Court of Appeals case. See id. The Court finds this argument unpersuasive. "Under Connecticut law, the party that raises unconscionability as a defense to the enforcement of any contract typically has the burden of showing that the contract is both procedurally and substantively unconscionable." D'Antuono, 789 F. Supp. 2d at 327 (citation omitted) (emphasis added). "Substantive unconscionability focuses on the 'content of the contract,' as distinguished from procedural unconscionability, which focuses on the 'process by which the allegedly offensive terms found their way into the agreement.'" Id. (citation omitted).

Defendants' argument focuses on the substance of the delegation clause and not the process by which that specific term found its way into the contract. "To make out a claim that the delegation provision is procedurally unconscionable, [defendants] must direct [their] procedural unconscionability argument at the delegation provision specifically." Pingel, 2014 WL 7334588, at *6. Defendants have not raised such an argument, instead arguing that the arbitration agreement as a whole is

procedurally unconscionable.[15] See Doc. #17 at 39-40. "Under
Rent-A-Center, [defendants are] required to direct [their]
challenge specifically at the delegation provision even where,
as here, a specific challenge to the delegation provision is
implicit in [their] claim that the entire agreement to arbitrate
is procedurally unconscionable." Pingel, 2014 WL 7334588, at *6
(citing Rent-A-Center, 561 U.S. at 72). Here, defendants make no
such specific challenge that the delegation clause is
procedurally unconscionable.[16]

"In some rare cases, a contractual provision may be so
outrageous as to warrant a court's refusal to enforce it based

---

[15] Although defendants make a half-hearted attempt to argue that
the arbitration agreement is procedurally unconscionable, the
substance of their argument is directed to the franchise
agreement as a whole, and not specifically to the arbitration
agreement. See Doc. #17 at 39-40. It is well established that
under the FAA a challenge to the making of a contract generally,
versus to the making the arbitration agreement specifically,
must be decided by the arbitrator. See Prima Paint Corp. v.
Floor & Conklin Mfg. Co., 388 U.S. 395, 402-04 (1967).

[16] In arguing that the arbitration clause is procedurally
unconscionable, defendants submit that they were not provided
with a copy of the AAA rules. See Doc. #17 at 30. To the extent
this argument can be read as directed towards the delegation
clause specifically, the Court finds it unpersuasive. The rules
to which the Arbitration Clause refer are readily available on
the internet and are rules of uniform application. Additionally,
defendants are not unsophisticated business people, but rather,
have overseen 30 Subway franchises which at some point employed
at least 80 people. See generally Doc. #17-1, Tripathi Dec.
Defendants present no argument as to how, if at all, they were
disadvantaged by not receiving a copy of these Rules.
Accordingly, the Court declines to find the delegation clause
procedurally unconscionable on this ground.

on substantive unconscionability alone." <u>D'Antuono</u>, 789 F. Supp. 2d at 327 (citation omitted). However, the provisions of the franchise agreement upon which defendants rely in making their argument are not so outrageous as to support a finding that the delegation clause is unconscionable. Indeed, defendants are free to raise the choice of law and California policy arguments with the arbitrator at arbitration. Accordingly, the Court finds that defendants have failed to meet their burden of establishing that the delegation provision is unconscionable under Connecticut law.

Having found that issues of arbitrability have been clearly and unmistakably delegated to the arbitrator, the Court does not reach the merits of defendants' remaining arguments, including whether the arbitration agreement is unconscionable and whether DAI's arbitration scheme is void as against public policy. These issues are for the arbitrator to resolve. Therefore, and where defendants do not dispute that they entered into the 2012 franchise agreement, the Court recommends that the Petition to Compel Arbitration [**Doc. #1**] be **GRANTED**.[17]

---

[17] Defendants also summarily argue that DAI's Petition to Compel Arbitration should be denied because DAI has unclean hands. <u>See</u> Doc. #17 at 48. Defendants' argument primarily relies on non-binding case law from California and is essentially an attempt to reargue whether the arbitration clause is unconscionable. The Court declines to undertake such an analysis in light of its finding that unconscionability of the arbitration agreement is for the arbitrator's determination. To the extent defendants

**C. Motion for Preliminary Injunction and/or Permanent Injunction and, if Necessary, an Emergency Expedited Decision on the Petition to Compel [Doc. #33]**

DAI also moves the Court for a preliminary and/or permanent injunction, and an emergency expedited decision on the Petition. [Doc. #33]. DAI makes this motion because defendants filed a motion in the California action seeking an "order that ... DAI will never be entitled to a stay of this matter under the California Arbitration Act or the Federal Arbitration Act and that DAI's arbitration clause with the Tripathis is unconscionable and unenforceable." Doc. #33-2 at 1-2. The California Court has scheduled argument on this motion on November 9, 2016. See id. at 2. Defendants have filed a memorandum in opposition to plaintiff's motion arguing: (1) the Anti-Injunction Act does not permit the requested injunction; and (2) the injunction sought by DAI is overbroad. [Doc. #40].

"Ordinarily, a party seeking a preliminary injunction must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." Anderson v. Cameron,

---

argue that arbitration should be ordered in California, see id. at 48, the Court has rejected this argument, supra.

568 F. App'x 67, 67-68 (2d Cir. 2014) (citing Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008)).

Defendants' California complaint asks the court there to determine what the Court here has already decided – namely, whether defendants are compelled to arbitrate their claims in Connecticut pursuant to the arbitration provision set forth in the 2012 franchise agreement. See Doc. #17-2 at 16-17 (count for declaratory relief seeking, inter alia, a declaration "that the arbitration clause is unconscionable under California law and therefore unenforceable, [and] that California law applies to such unconscionability determination"). Defendants admit as much in their briefing, asserting that because "the two actions ask the respective courts to decide the enforceability of DAI's arbitration scheme, both courts would be considering the same issues and could possibly come to conflicting decisions." Doc. #17 at 25. Therefore, "[c]ontinued litigation of these issues in parallel state proceedings will undermine, if not moot, this Court's ruling." Hollingsworth, 949 F. Supp. at 86 (citing Doctor's Assocs., Inc. v. Distajo, 870 F. Supp. 34, 36 (D. Conn. 1994), aff'd in part, rev'd in part, 66 F.3d 438 (2d Cir. 1995)). Accordingly, the issuance of an injunction against the California state court proceedings would be necessary to protect this Court's order and jurisdiction. See, e.g., Emilio v. Sprint Spectrum, L.P., 315 F. App'x 322, 325 (2d Cir. 2009) ("Because

the district court was issuing an order compelling arbitration
and Sprint was seeking a motion in state court to enjoin Emilio
to dismiss his arbitration claims, the district court correctly
concluded that an injunction was necessary in order to protect
its order."); see also Doctor's Assocs., Inc. v. Agrawal, No.
3:05CV250(PCD), 2006 WL 1028908, at *6 (D. Conn. Apr. 13, 2006);
Doctor's Assocs., Inc. v. Quinn, 42 F. Supp. 2d 184, 188 (D.
Conn.), aff'd, 205 F.3d 1322 (2d Cir. 1999).

Defendants argue, however, that the Anti-Injunction Act
does not permit the requested injunction, contending that this
Court cannot enjoin defendants "from proceeding with the
California Action pending a decision on the Petition to Compel
Arbitration." Doc. #40 at 2-4. Although defendants cite a string
of cases holding that no injunction was permissible under the
Anti-Injunction Act, see Doc. #40 at 3, these cases are
inapposite. Here, the Court does not intend to recommend that
the District Court issue an injunction pending the decision on
the Petition. Rather, and by stark contrast, the Court has made
a recommended decision on the Petition, and based on that
decision, finds that the issuance of an injunction is necessary
to protect this Court's orders and aid in the exercise of its
jurisdiction. Indeed, defendants' string cite includes Emilio,
315 F. App'x 322, which rejected a similar Anti-Injunction Act
argument and held that "the district court correctly concluded

that an injunction was necessary in order to protect its
order[]" compelling arbitration. Emilio, 315 F. App'x at 325.
Accordingly, on the record before the Court, defendants' Anti-
Injunction Act argument is misplaced.

Defendants next argue that the requested injunction is
overly broad. See Doc. #40 at 4-12. Defendants first contend
that DAI does not have standing to seek an injunction on behalf
of Patel and Letap. See id. at 4-5. In making this argument,
defendants cite only to general standing principles and do not
discuss the nuances of this matter, or the Arbitration Clause at
issue. Defendants further ignore Rule 65, which specifically
contemplates that an injunction "order binds only the following
who receive actual notice of it by personal service or
otherwise: (A) the parties; (B) the parties' ... agents ...; and
(C) other persons who are in active concern or participation
with any described in Rule 65(d)(2)(A) or (B)." Fed. R. Civ. P.
65(d)(2)(A)-(C). Because Patel and Letap are admittedly agents
of DAI, an intended beneficiary of the Arbitration Clause, see
Doc. #1-12 at ¶10d, it follows that DAI has standing to seek an
order enjoining improperly brought litigation against those
agents. See Ecopetrol S.A. v. Offshore Expl. & Prod. LLC, 172 F.
Supp. 3d 691 (S.D.N.Y. 2016) ("A permanent injunction, through
the automatic operation of Rule 65(d)(2), may bind a non-party
who is in active concert or participation with the parties."

(collecting cases)). Accordingly, the Court rejects defendants' standing argument.[18]

Defendants next attempt to re-argue that Patel and Letap are indispensable parties because DAI seeks an injunction that affects their interests. See Doc. #40 at 5. In that same vein, defendants again request that the Court "look through" the pleadings for purposes of ascertaining diversity jurisdiction. See id. at 6. The Court will not consider these arguments here as they go to the merits of the Motion to Dismiss, which the Court has already addressed.

Defendants also argue that Patel and Letap should not "be exculpated from alleged intentional torts and statutory violations and this Court may not utilize, and should not even consider utilizing, its injunctive power to accomplish that result." Doc. #40 at 6. This argument, however, goes to the merits of the Petition to Compel Arbitration, which the court has now granted. In that regard, the Court is not preventing

---

[18] As previously noted, the defendants facially agreed to arbitrate any claims arising under the FAA against DAI alone and pursuant to that agreement may not name DAI's agents as parties to any proceeding, including the litigation in California. See Doc. #1-12 at ¶10d. Arbitrability has been delegated to the arbitrator, and therefore, what claims may be arbitrated against whom, or whether the arbitration clause is enforceable, are determinations for the arbitrator's consideration in the first instance. This Court makes no finding as to whether the claims asserted against Patel and Letap arbitrable. Rather, the Court finds that any arguments on this point must be presented first to the arbitrator.

defendants from asserting their claims against Patel and Letap. Indeed, because arbitrability has been delegated to the arbitrator, the issue of whether the claims against Patel and Letap fall within the scope of the Arbitration Clause is for the arbitrator's determination and there is nothing stopping defendants from presenting such arguments in that forum. Accordingly, the Court finds this argument unpersuasive.

Defendants contend that this Court should not interfere with the California Court's proceedings scheduled for November 9 because Patel and Letap are not parties to the present action and have waived their right to demand arbitration. See Doc. #40 at 8-10. This argument, however, goes to the merits of the Petition and Motion to Dismiss, which have now been fully briefed and decided. Although defendants are free to raise this argument with the arbitrator, the Court declines to consider such arguments here.

Last, defendants argue that the Court cannot enjoin the California court from litigating claims involving defendants' challenges to the Connecticut judgment. See Doc. #40 at 10-12. This is correct, and DAI does not seek to enjoin the domestication proceeding in Contra Costa County, California. The proposed injunction order explicitly refers to the litigation pending in Marin County, California. See Doc. #33-1 To the extent that defendants' Marin County complaint also seeks to

64

"avoid California recognition of the judgment and to vacate it" those arguments may be made in the domestication proceedings. Alternatively, because arbitrability has been delegated to the arbitrator, defendants may present those arguments to the arbitrator.

Therefore, the Court recommends that the District Court **GRANT** DAI's Motion for Preliminary and/or Permanent Injunction [**Doc. #33**], and enter an injunction in the form of that attached to DAI's Motion. See Doc. #33-1.

## IV.   Conclusion

Thus, for the reasons stated above, the Court recommends that the defendants' Motion to Dismiss [**Doc. #16**] be **DENIED**, DAI's Petition to Compel Arbitration [**Doc. #1**] be **GRANTED**, and that DAI's Motion for Injunction [**Doc. #33**] be **GRANTED**

This is a Recommended Ruling. See Fed. R. Civ. P. 72(b)(1). **Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days of being served with order.** See Fed. R. Civ. P. 72(b)(2). **Failure to object within fourteen days may preclude appellate review.** See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b); and D. Conn. L. Civ. R. 72.2; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir.

1989) (per curiam); <u>F.D.I.C. v. Hillcrest Assoc.</u>, 66 F.3d 566, 569 (2d Cir. 1995).[19]

SO ORDERED at New Haven, Connecticut, this 3rd day of November, 2016.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

---

[19] Although this is a Recommended Ruling, United States District Judge Janet C. Hall is familiar with the parties' arguments and intends to review this ruling immediately and to promptly rule on any objection(s) thereto.